[Crim. No. 12526. Fourth Dist., Div. Two. June 17, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
DEXTER WAYNE WILLIAMS, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Ralph H. Goldsen, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and John W. Carney, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GARDNER, J.*—In *People* v. *Shirley* (1982) 31 Cal.3d 18 [181 Cal. Rptr. 243, 641 P.2d 775], the Supreme Court held that the testimony of a witness who has undergone hypnosis for the purpose of restoring his memory of the events in issue is inadmissible as to all matters relating to those events from the time of the hypnosis session forward. In the initial opinion that rule was held applicable to all cases not yet final as of the date of that decision. A modification of *Shirley* was filed (now fn. 53, 31 Cal.3d at p. 67), which contains the following statement: "The principles stated in this opinion will govern the admissibility of the testimony of any witness who submits to pretrial hypnosis after the date of this decision. We take no position at this time as to the application of those principles to witnesses hypnotized before the date of this decision."

In this case we affirm a judgment of conviction based upon the testimony of a witness who had undergone hypnosis for the purpose of restoring her memory of the events in issue and in so doing hold that *Shirley* shall be given only prospective effect.

Defendant waived a jury, was found guilty by the court of rape and robbery and sentenced to prison.

One night the defendant and his codefendant Calhoun robbed a fast food restaurant at gunpoint.[1] They forcibly took with them when they

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1]The trial court found Calhoun's guilt had been proved by a preponderance of the evidence but was unable to find that his guilt had been established beyond a reasonable doubt.

departed, Cheryl, a 19-year-old employee of the restaurant. She was taken to a secluded area where the defendant forcibly raped her. The other restaurant employee never saw the defendant and so the prosecution's case depends entirely on Cheryl. Without her testimony the defendant is home free.

On the night of the crime Cheryl accurately described her assailant.

Cheryl was then shown a photographic lineup. Defendant's picture was not in this lineup although that of his brother, Darnell, was. Cheryl did not identify anyone in the photographic lineup.

Cheryl then attended a corporeal lineup which again did not contain the defendant who apparently was still not a suspect. Calhoun was in this lineup but Cheryl wasn't able to identify him. She was so frightened she did not look closely at the participants in the lineup.

Then Cheryl was hypnotized by a police officer. During this session she was told to review the lineups she had previously attended including the one which contained the picture of defendant's brother, Darnell. Cheryl did not identify Darnell as one of her assailants. This is understandable since he was not. Cheryl testified that this hypnosis session had not changed her recall of the incident.

Then after this hypnosis session Cheryl viewed a corporeal lineup which for the first time contained the defendant. The record does not indicate just when and how the defendant became a suspect. Cheryl identified him. This was the first time she had seen him or a photograph of him. She testified unequivocally that her identification was based on her recollection of the event. It was obviously not based on any hypnotic suggestion since the defendant had never been mentioned at the hypnosis session.

At the pretrial hearing on the admissibility of Cheryl's testimony the defendant presented the testimony of a psychiatrist who testified as to the unreliability of posthypnosis testimony and specifically as to the procedure used in this case. He cast doubt on Cheryl's testimony. However his testimony became somewhat suspect when it developed that one of the bases of his opinion was his impression that the officers had shown Cheryl pictures of the defendant prior to the hypnosis session. This of course was not true. Then the psychiatrist decided that some-

how the showing of the defendant's brother's picture resulted in some kind of an improper suggestion to Cheryl. The trial court was singularly unimpressed with this psychiatrist's testimony and said so. After listening to all of the evidence on the subject the trial court said "The court does not believe that any observations made by [Cheryl] concerning defendant Williams' brother was in any way related to defendant Williams. The court is satisfied, beyond a reasonable doubt, that the hypnosis session did not in any way effect [Cheryl's] later identification of defendant Williams."

As indicated the court found the defendant guilty as charged.

As noted the Supreme Court in *Shirley* made clear the "principle" that the testimony of a witness who has undergone hypnosis for the purpose of restoring his memory is inadmissible as to all matters relating to those events from the time of the hypnosis session forward. Obviously the witness in this case fits that description. However, at the time of this hypnosis session no such principle existed.

██ The inquiry is whether *Shirley* is to be given retroactive effect. The criteria which the Supreme Court has enunciated (*People* v. *Gainer* (1977) 19 Cal.3d 835, 853 [139 Cal.Rptr. 861, 566 P.2d 997, 97 A.L.R.3d 73]) in determining whether a new rule should be made retroactive are:

(1) The purpose to be served by the new standard:

Rather obviously the Supreme Court has determined that the process of refreshing recollection by means of hypnosis is suspect and that testimony resulting from this practice should be kept from the jury.

(2) The extent of reliance by law enforcement authorities on the old standard:

Unquestionably law enforcement authorities have been widely using hypnosis for the purpose of refreshing recollection.

(3) The effect on the administration of justice of a retroactive application of the new standard:

There can be no question but that the effect would be devastating in pending cases such as this. ██ If applied to this case a defendant

found guilty by the trier of fact of two serious crimes goes free. *Shirley* had an escape hatch. The prosecuting witness had testified at a preliminary hearing before the hypnosis session and that transcript could be used on retrial. No such escape hatch exists in this case. Cheryl's testimony affords the only basis for the conviction of this defendant. The trier of fact has ruled, based on that testimony, that this defendant is guilty of robbery and forcible rape. If we apply *Shirley* retroactively this defendant escapes responsibility. Additionally, in this case an experienced and capable trial judge has ruled beyond a reasonable doubt that the hypnosis had no effect on Cheryl's testimony. This holding becomes meaningless if we apply *Shirley* retroactively.

It is true that in considering the application of the rules governing retroactivity we must consider the admonition found in *Gainer, supra*, 19 Cal.3d at page 853, that if the principle set forth in the rule serves the integrity of the fact-finding process the argument for retroactive application is particularly strong. However this is not a blanket ukase against all retroactivity in all cases which involve the fact-finding process. *Shirley* is a policy decision which specifically applies to future cases in order to avoid a practice which the Supreme Court has condemned. Nevertheless the practice of admitting hypnotically induced testimony, subject to the trial court's discretion existed for many years prior to *Shirley* and still exists in the majority of jurisdictions. (See *State* v. *Hurd* (1981) 86 N.J. 525 [432 A.2d 86, 96-97], Annot., Admissibility of Hypnotic Evidence at Criminal Trial (1979) 92 A.L.R.3d 442.)

Therefore we are hardly in a position to say that in every case in which hypnosis rears its ugly head, the integrity of the fact-finding process has been seriously damaged.

Obviously the determination as to retroactivity involves a balancing process. The Supreme Court has made it clear that *Shirley* shall have prospective application. In the balancing process as to retroactivity it appears to us that considerations of judicial policy and the effective administration of justice compel the determination that *Shirley* shall not be given retroactive application.

Judgment affirmed.

Kaufman, Acting P. J., and McDaniel, J., concurred.

GARDNER, J.*—I concur.

*Shirley* is really more of a polemic than an opinion. As a polemic it makes interesting reading. The protagonists are so clearly defined.

The prohypnosis expert is a lowly police psychologist, wretchedly educated ("Ed. E"), who is, of all things, a director of a "proprietary school" in Los Angeles. (Just what that has to do with this case escapes me.) This police psychologist is so dumb that he accepts at "face value" and "without question" the "somewhat extravagant conclusions" of a neurosurgeon who is apparently pretty much of a dummkopf himself.

On the other hand, the antihypnosis experts are "highly experienced," "nationally known," "pioneers" and "respected authorities" who present the "generally accepted view" which is set forth in "scholarly articles" and "leading scientific studies." Thus, the guys in the white hats and those in the black hats are clearly defined and appropriately labeled.

The authorities suffer the same treatment.

Somehow, lost in the shuffle, is the fact that the majority rule in this country is that hypnotically induced testimony is admissible. (See *United States* v. *Awkard* (9th Cir. 1979) 597 F.2d 667 cert. den., 444 U.S. 885 [62 L.Ed.2d 116, 100 S.Ct. 179]; *United States* v. *Adams* (9th Cir. 1978) 581 F.2d 193; *United States* v. *Narciso* (E.D.Mich. 1978) 446 F.Supp. 252; *Clark* v. *State* (1980 Fla.App.) 379 So.2d 372; *Creamer* v. *State* (1974) 232 Ga. 136 [205 S.E.2d 240]; *People* v. *Smrekar* (1979) 68 Ill.App.3d 379 [24 Ill.Dec. 707, 385 N.E.2d 848]; *State* v. *McQueen* (1978) 295 N.C. 96 [244 S.E.2d 414]; *People* v. *Hughes* (1979) 99 Misc.2d 863 [417 N.Y.S.2d 643]; *State* v. *Jorgensen* (1971) 8 Ore.App. 1 [492 P.2d 312]; Annot., Admissibility of Hypnotic Evidence at Criminal Trial (1979) 92 A.L.R.3d 442.)

These authorities hold that testimony of a witness whose memory has been revived through hypnosis should be treated like any other refreshed recollection. That the witness' memory may have been impaired by hypnosis or that suggestive material may have been used to refresh his recollection is considered to be a matter affecting credibility, not admissibility. It is assumed that cross-examination will enable the jury to

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

properly evaluate the effect of hypnosis on the witness and the credibility of his testimony.

According to *Shirley*, cases following that rule rely on an authority which "summarily disposed" of this issue with "little or no analysis." The part I really like is the classification of all contra authorities as "moribund." Somehow I visualize a huge stack of dying opinions, which, to borrow from John Randolph of Roanoke, "shine and stink like rotten mackeral in the moonlight."

Of course the cases to the contrary are "well reasoned" and "leading." Certainly.

The inevitability of the conclusion to be reached is revealed in the court's reliance on an Arizona Supreme Court opinion which said that this type of testimony was to be inadmissible from "the time of the hypnosis session *forward*." There is something terribly final about that phrase. It is reminiscent of Chief Joseph's statement on his surrender to General Howard—"From where the sun sets, I will fight no more, *forever*."

Tom Paine would have loved *Shirley*.

However, much as I admire the writing style of *Shirley*, I am troubled by the concept that the testimony of a percipient witness as to relevant facts be deemed inadmissible simply because he has undergone hypnosis.

What next? Once we begin to rule evidence inadmissible because of our dissatisfaction with the witness' credibility based on improper memory jogging, where do we stop? What about witnesses who have been brainwashed, coached, coerced, bribed or intimidated? Are we going to reject all this testimony because it is suspect? I have no doubt that a corrupt polygraph operator could convince a witness of limited intelligence that his accurate memory is actually faulty and thus persuade him to testify to an untruth. The same is true with the so-called truth serums, hallucinogenic drugs or other exotic drugs only hinted at in C.I.A. suspense fiction. I have no doubt that through the misuse of these drugs a witness' testimony may become faulty and even suspect. Once having undergone exposure to something of this nature is the witness still going to be allowed to give his best recollection, or be precluded from testifying?

I am firmly of the belief that jurors are quite capable of seeing through flaky testimony and pseudoscientific claptrap. I quite agree that we should not waste our valuable court time watching witch doctors, voodoo practitioners or *brujas* go through the entrails of dead chickens in a fruitless search for the truth. However this is only because the practice is too time consuming and its probative value is zilch. I like the rule established in *Frye* v. *United States* (D.C.Cir. 1923) 293 F. 1013, on the basis that it is a good pragmatic tool to keep out unnecessary, time consuming and nonproductive evidence. In other words I am a great believer in Evidence Code 352. However, the idea that an eyeball witness to a transaction be denied the opportunity to tell a jury his recollections of what he saw is disturbing to me whether that recollection has been refreshed by hypnosis, truth serum, drugs, intimidation, coercion, coaching, brainwashing or impaired by the plain old passage of time.

Another aspect of *Shirley* disturbs me even more. In its modification *Shirley* determined that a defendant who submits to pretrial hypnosis may nevertheless testify (31 Cal.3d at p. 67). The idea that the predator may testify and yet his victim may not offends my sense of justice. It appears to me that the scales of justice are tilted—dangerously.

A petition for a rehearing was denied July 13, 1982, and appellant's petition for a hearing by the Supreme Court was denied September 15, 1982.