[Crim. No. 13133. Fourth Dist., Div. One. Nov. 19, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES ANTHONY PARRISON, Defendant and Appellant.

**COUNSEL**

Carmela F. Simoncini, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WEINER, ACTING P. J.**—Charles Anthony Parrison appeals the judgment entered on the jury verdict convicting him of attempted murder (Pen. Code, §§ 664 and 187)[1] with personal use of a firearm (§ 12022.5) and with being an ex-felon in possession of a firearm (§ 12021). We reject his several contentions pertaining to pretrial, trial, and posttrial error and affirm the judgment.

*Factual and Procedural Background*

On August 19, 1980, San Diego police officer Steven McIntire was shot and wounded. The shooting occurred about 11 p.m. while McIntire was sitting in his patrol car writing a report of his investigation of a disturbance near Imperial Avenue. Two black men walked by McIntire's car. One of them asked why the police were always "hassling" people in the area. McIntire then felt something on the back of his head and turned to see one of the men pointing a gun at him. In attempting to get the gun, McIntire was shot in the back of the neck. The assailant left the gun on McIntire's car.

Officer Harasymchuk promptly responded to McIntire's call for help. McIntire, who was able to view his assailant for 15 to 20 seconds, told Harasymchuk the person who shot him was a black male wearing a black derby hat. The other person was wearing dark clothing and was on the passenger side of the vehicle.

Officer Stephen McNally arrived on the scene shortly after the shooting and saw several people in front of a house at 3087 Imperial Avenue, two of whom went into the house. When additional officers arrived, the house was surrounded. One officer opened the front door, announced his presence, and ordered everyone to leave. When the occupants left, the officers searched the premises for suspects.

In order to avoid confusion and possible injuries to onlookers the police restrained all persons from approaching the residence. One of the persons restrained, Mrs. Pearl Moon, was the owner of the residence. The police allowed her to reenter the premises about an hour and a half after they had entered to look for suspects. When asked, Mrs. Moon consented to a search of her home and later signed a "Consent to Search" form.

Parrison and codefendant Ricky Weaver were in the house and were taken into custody shortly before midnight and transported to the police station. The police administered a hand-swab test to determine whether Parrison had gun-

---

[1]All statutory references are to the Penal Code unless otherwise specified.

powder residue on his hand and later advised him of his *Miranda*[2] rights. The two police officers questioning Parrison asked him whether he had recently handled a gun. Parrison replied he had not. The two officers briefly left the interview room. Upon their return, they falsely told him the swab test showed he had touched a gun within the previous 12 hours. Parrison did not immediately respond but, after a pause, said earlier that evening he had held a gun given to him by a child in the house.

Evidence the police found at the house included a black derby hat. At trial, several witnesses testified Parrison entered the house shortly after they heard a shot. Parrison was sweating, breathing hard, and was wearing a derby hat.

McIntire was hypnotized three days after the shooting. During the hypnosis session, he described his assailant as a black male wearing dark clothes and a derby hat with natural hair pressed down around the sides. The man had a wide nose, dark skin, rough complexion and something wrong with a tooth (was missing a tooth, or had a gold tooth in front). Although Parrison had already been arrested and charged with attempted murder, no identification lineup was attempted until after the hypnosis session. The day after the session, McIntire identified Parrison in a lineup. At trial, Parrison did not object to the lineup, nor did he challenge the admissibility of McIntire's testimony. He did, however, introduce expert testimony that criticized hypnosis in general and specifically criticized the hypnosis of McIntire as being subject to grave dangers.

While questioning Parrison's brother, the prosecutor brought out a reference to their gang membership. Parrison's objection to further questioning along that line was sustained but the court overruled his motion to strike the witness' testimony relating to the gang.

### PRETRIAL

*Substantial Evidence Supports the Trial*
*Court's Finding of Exigent Circumstances*
*Allowing a Warrantless Entry Into the*
*Residence and Excusing Compliance With*
*Section 844*

 Parrison's first attack on the judgment is directed to the court's denial of his suppression motion. (§ 1538.5.) He asserts the entry by the police into the residence did not conform to the knock and notice requirements of section

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

844[3] and the officers conducted a general exploratory search without a warrant and without valid consent.

■■ A section 1538.5 proceeding is an evidentiary hearing in which the trial court is vested with the power to judge the credibility of witnesses, resolve any conflicts in the testimony, weigh the evidence, and draw factual inferences. On appeal, all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence. (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) The appellate court must also independently review the facts against the applicable constitutional standards. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 597 [174 Cal.Rptr. 867, 629 P.2d 961].)

■ Here, McNally arrived within 30 seconds of a radio dispatch advising an officer had been shot. He saw 2 men run into the residence about 20 yards from the spot where the shooting had occurred. In light of these exigencies, a warrantless entry into the premises (see *People* v. *Escudero* (1979) 23 Cal.3d 800, 808-810 [153 Cal.Rptr. 825, 592 P.2d 312]) without complying with section 844 was permitted. (*Parsley* v. *Superior Court* (1973) 9 Cal.3d 934, 938 [109 Cal.Rptr. 563, 513 P.2d 611].) There was ample evidence before the court to support its finding that the shooting of the police officer had created an urgent situation requiring immediate entry into the residence to prevent the destruction of evidence and to avoid the possibility the suspects might escape.

*Substantial Evidence Supports the Trial*
*Court's Finding that Moon's Consent to*
*Search Was Voluntary*

■ Parrison also challenges the validity of the oral and written consent to search given by Mrs. Moon. The question of voluntariness of consent is for the factfinder and a finding to that effect must be upheld where supported by substantial evidence. (*People* v. *James* (1977) 19 Cal.3d 99, 107 [137 Cal.Rptr. 447, 561 P.2d 1135].)

■ There was evidence the police had already conducted a thorough search of the house when they requested Moon's consent. Parrison contends her consent was thus somehow coerced. Although there may be some human tendency to agree to an after-the-fact search because at that late stage perhaps nothing will be gained by refusing, that social response is not inevitable. Here, the

---

[3]Section 844 in pertinent part states: "To make an arrest . . . a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

evidence supports the court's finding that Mrs. Moon actually wanted the police to search her house and voluntarily gave both her oral and written consent so they could do so.

*The Police Did Not Act Improperly in*
*Questioning Parrison; His Admissions*
*Were Properly Admitted Into Evidence*

■ Parrison argues his statements to the police were inadmissible as they were obtained by subterfuge. The alleged subterfuge relates to the hand-swab test taken by Parrison, after which the police falsely told him the test indicated he had handled a gun earlier that evening.

■ The use of a subterfuge by police officers is not necessarily impermissible because subterfuge per se is not the same as coercive conduct. (*People* v. *Felix* (1977) 72 Cal.App.3d 879, 885 [139 Cal.Rptr. 366].) ■ The court will not exclude a defendant's voluntary statement which was the product of police deception or communication of false information. (*People* v. *Hogan* (1982) 31 Cal.3d 815, 840-841 [183 Cal.Rptr. 817, 647 P.2d 93].) A resulting admission is admissible provided the subterfuge is not likely to produce an untrue statement. (*People* v. *Felix, supra,* 72 Cal.App.3d at p. 886.) The statement must be excluded if the defendant's will was overborne. (See *People* v. *Hogan, supra,* 31 Cal.3d at p. 841.) Psychological coercion is as pernicious as physical intimidation (*id.,* at pp. 840-841), and promises of leniency or assistance are most suspect. (*Ibid.*) ■ To determine voluntariness, the court must examine the circumstances surrounding the statement. (*Ibid.*)

■ Here, the police technique did not overbear Parrison's will. They made no promises to him nor did they threaten him. They simply informed him, albeit incorrectly, of the test results and waited for his reaction. Parrison's voluntary statement was admissible. This conclusion is consistent with other cases on this issue. (See, e.g., *People* v. *Felix, supra,* 72 Cal.App.3d 879 [police falsely told a suspect her accomplice had confessed]; *In re Walker* (1974) 10 Cal.3d 764 [112 Cal.Rptr. 177, 518 P.2d 1129] [police falsely told the wounded defendant he might not live until he reached the hospital].)

TRIAL

*The Court Properly Allowed Introduction*
*of McIntire's Post-Hypnotic Testimony*

■ Parrison argues the court abused its discretion by allowing Officer McIntire to testify. In effect, he contends *People* v. *Shirley* (1982) 31 Cal.3d 18

[181 Cal.Rptr. 243, 641 P.2d 775], cert.den. — U.S. — [— L.Ed.2d —, — S.Ct. —], should be applied retroactively.

In *Shirley,* the court held ". . . that the testimony of a witness who has undergone hypnosis for the purpose of restoring his memory of the events in issue is inadmissible as to all matters relating to those events, from the time of the hypnotic session forward." (31 Cal.3d at pp. 66-67.) According to *Shirley,* a hypnotized witness' testimony is unreliable.[4] Further, the defendant may not be able to cross-examine the witness effectively once he has been hypnotized.[5]

Whether *Shirley* should be applied retroactively does not come to us on a clear slate.[6] *People* v. *Williams* (1982) 132 Cal.App.3d 920 [183 Cal.Rptr. 498] held *Shirley* was not retroactive. ■■ ■■ ■■ ■■ In deference to *Williams* and the pendency of this issue at the Supreme Court in *People* v. *Aquino* (Crim. 22657, hg. granted June 24, 1982),[7] we reject Parrison's reliance on *Shirley* as requiring exclusion of McIntire's testimony.[8]

---

[4]The court determined the testimony was unreliable for several reasons. In particular, during the hypnosis the subject is extremely susceptible to the hypnotist's suggestions. (*Id.,* at pp. 63-64.) The hypnotist may verbally or nonverbally implant thoughts in the subject's mind; he may do so intentionally or unknowingly. (*Id.,* at p. 64.) Moreover, because the subject strongly wishes to please the hypnotist, rather than admitting ignorance he will produce a memory by relying on bits and pieces of his existing memory, frequently giving credence to items on which he normally (i.e., absent the hypnosis) would not rely. (*Id.,* at pp. 64-65.) Finally, no one can distinguish during or after the hypnosis between the subject's "true" memories and those memories which he produced relying on incredible factors. (*Ibid.*)

[5]Hypnosis solidifies the subject's memory so that he becomes convinced of the absolute truth of his memory. (*Id.,* at p. 65.) He also suffers posthypnotic source amnesia, where he retains the memory but loses the recollection of how he acquired it. (*Ibid.*) Cross-examination may be ineffective to expose the resulting unreliability. (*Id.,* at p. 66.) In fact, the court observed, some law enforcement authorities hypnotize prospective witnesses solely to render them impervious to attack on cross-examination. (*Id.,* at p. 69, fn. 56.)

[6]*Shirley* originally held the rule it announced was to apply to all cases not yet final. (*People* v. *Shirley, supra,* 31 Cal.3d at p. 67, fn. 53.) Later the decision was modified and footnote 53 of the original decision was deleted. In its place the court made the following statement: "The principles stated in this opinion will govern the admissibility of the testimony of any witness who submits to pretrial hypnosis *after the date* of this decision. We take no position at this time as to the application of those principles to witnesses hypnotized before the date of this decision." (*Id.,* at p. 67, fn. 53, italics supplied.)

[7]We take no position on whether a witness precluded from testifying because he has been hypnotized is unavailable as defined in Evidence Code section 240 for purposes of exceptions to the hearsay rule.

[8]Parrison's failure to object at trial on the basis of *Shirley*'s rationale does not prevent his raising the issue on appeal. Although *a party's failure to object at trial normally precludes an appeal* on that point (*People* v. *Rogers* (1978) 21 Cal.3d 542, 548 [146 Cal.Rptr. 732, 579 P.2d 1048]), a supervening change in the law permits the appellate court to consider the issue. (*People* v. *De Santiago* (1969) 71 Cal.2d 18, 22-23 [76 Cal.Rptr. 809, 453 P.2d 353].) *Shirley* substantially altered the law regarding the admissibility of a hypnotized witness' testimony. (See *Shirley,* 31 Cal.3d at p. 77, conc. and dis. opn. of Kaus, J.)

Parrison nevertheless impliedly contends *Shirley*'s underlying rationales apply to his case. Regardless of whether *Shirley* applies, a defendant may still prevent the People from introducing evidence which is unreliable or which violates his rights under the Sixth or Fourteenth Amendments.

Unreliable evidence lacks trustworthiness and is speculative; therefore it is irrelevant. (See *People* v. *Allen* (1976) 65 Cal.App.3d 426, 434 [135 Cal.Rptr. 276].) Only relevant evidence is admissible. (Evid. Code, § 350.) Evidence is relevant if it has any tendency in reason to prove or disprove any disputed fact. (*Ibid.*; Evid. Code, § 210.) A proffered evidentiary item must, in the light of logic, reason, experience, or common sense, have by reasonable inference a tendency to prove or disprove a disputed fact. (1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 21.3, rule (1)(b), p. 501.) The court must exclude irrelevant proffered evidence which has a tendency to prove or disprove a disputed fact only if the trier of fact must draw speculative or conjectural inferences from it. (*Id.*, at p. 502.)

Here, Parrison did not object to the admission of McIntire's testimony on relevancy grounds. Instead, he called Dr. Ryan as an expert witness who testified McIntire's hypnosis session was inadequate and opined it was overly suggestive. The court did not abuse its discretion by impliedly finding McIntire's testimony sufficiently reliable to permit him to testify.

Parrison also contends the hypnosis rendered McIntire impervious to cross-examination, thus denying Parrison his rights under the Sixth Amendment.[9] The scope of these constitutional protections has been discussed extensively. (See, e.g., *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930]; *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *Douglas* v. *Alabama* (1965) 380 U.S. 415 [13 L.Ed.2d 934, 85 S.Ct. 1065]; *Pointer* v. *Texas, supra*, 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065].) We are unable to determine if Parrison's rights have been denied because he has not provided a sufficient factual basis for his claim. Absent a demonstration based upon the totality of the circumstances that the particular hypnosis was so suggestive to constitute a constitutional violation (see *Neil* v. *Biggers, supra,* 409 U.S. at p. 199 [34 L.Ed.2d at p. 411]), we cannot conclude McIntire's testimony should have been excluded.

---

[9]The Sixth Amendment in pertinent part states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

Parrison does not argue the admission of McIntire's testimony violated his due process rights. An identification may be overly or unnecessarily suggestive, thus constituting an impermissible infringement upon a defendant's due process rights. (See *Neil* v. *Biggers* (1972) 409 U.S. 188, 198 [34 L.Ed.2d 401, 411, 93 S.Ct. 375].) Nevertheless, the line between violation of the due process and the confrontation clauses is unavoidably blurred because the Sixth Amendment's guarantee applies to the states through the Fourteenth Amendment's due process clause. (*Pointer* v. *Texas* (1965) 380 U.S. 400, 405 [13 L.Ed.2d 923, 927].)

*There Was Sufficient Evidence to*
*Convict Parrison*

Parrison's contention his conviction must be reversed because of the insufficiency of the evidence is directly tied to his *Shirley* argument. Impliedly, he concedes that if McIntire's testimony is to be considered, there is substantial evidence to support the jury verdict. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738].) Moreover, the testimony of the other witnesses is not inherently improbable as to require reversal. (See *People* v. *Mayberry* (1975) 15 Cal.3d 143, 150 [125 Cal.Rptr. 745, 542 P.2d 1337].)

*The Court Did Not Err in Denying*
*Parrison's Motion For Mistrial*
*Because of the Prosecutor's*
*Reference to Gang Membership*

■ Parrison's final argument of prejudicial error at trial relates to the prosecutor's alleged misconduct by trying to tie Parrison into gang-related activity. The introduction of gang membership evidence has been strongly criticized. (See *People* v. *Cardenas* (1982) 31 Cal.3d 897 [184 Cal.Rptr. 165, 647 P.2d 569].) Nevertheless, had the evidence here not been admitted, it is not reasonably probable the jury would have reached a result more favorable to Parrison. (*Id.,* at p. 910.) There were a few references to club membership and a single reference to gang membership in this two-week trial in which more than 30 witnesses testified. When the court warned the prosecutor to cease questioning the witnesses regarding gang membership, the prosecutor complied. There was no prejudice. (Cf., *In re Wing Y.* (1977) 67 Cal.App.3d 69 [136 Cal.Rptr. 390]; *People* v. *Perez* (1981) 114 Cal.App.3d 470 [170 Cal.Rptr. 619].)

POSTTRIAL

*The Trial Court Acted Within Its*
*Discretion in Denying Parrison's*
*Motion for New Trial*

■ "A motion for a new trial is made to the sound discretion of the court, and its ruling will not be disturbed except on a showing of clear abuse." (*People* v. *McDaniel* (1976) 16 Cal.3d 156, 177 [127 Cal.Rptr. 467, 545 P.2d 843].) ■ "A defendant on a motion for a new trial based on newly discovered evidence must show inter alia that the evidence [discovered] is in fact newly discovered; that it is not merely cumulative to other evidence bearing on the factual issue; that it must be such as to render a different result

probable on a retrial; and that the moving party could not, with reasonable diligence, have discovered and produced the evidence at trial." (*Id.,* at p. 178.)

■ Parrison claims the court abused its discretion by not granting his motion for new trial based on the newly discovered evidence contained in the affidavit of witness Tina Farr. Ms. Farr offered additional testimony about a conversation she had with codefendant Weaver and a third person on the night of the shooting. She declared she had not so testified because she was afraid of Weaver. In denying the motion, the court found the evidence was not newly discovered because Ms. Farr was a witness and was always available for questioning. Moreover, the court believed her declaration was not credible and was "highly suspect" because she should not have lost her fear once the jury rendered its verdict.[10]

The reasons given by the court reflect its conscientious and thoughtful examination of the issues. The court acted within its discretion in denying Parrison's motion.

*Disposition*

Judgment affirmed.

Work, J., and Zumwalt, J.,* concurred.

---

[10]The jury could not reach a verdict on the charges against Weaver and a mistrial was declared.

*Assigned by the Chairperson of the Judicial Council.