Filed 7/16/15  Leidig v. Zenith Electronics CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JENNY M. LEIDIG et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>ZENITH ELECTRONICS LLC,<br><br>    Defendant and Respondent. | B256932<br><br>(Los Angeles County<br>Super. Ct. No. BC477685) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Emilie Elias, Judge.  Affirmed.

The Lanier Law Firm, Mark D. Bratt, Peter C. Beirne, H. W. Trey Jones, and Stephanie M. Taylor, for Plaintiffs and Appellants.

WFBM, Katherine P. Gardiner, Tina Broccardo Van Dam, and Sean C. McGah, for Defendant and Respondent.

_____

The appeal in this asbestos case is from a summary judgment in favor of respondent Zenith Electronics LLC (Zenith). Appellants are Jennie M. Leidig, individually, as the personal representative of the estate of George K. Leidig (decedent), and as a successor in interest of Cindy S. Leidig, who died during the pendency of this appeal; as well as Julie A. Kruger, Laura L. Dailey, and George R. Leidig. Appellants argue the trial court abused its discretion in sustaining Zenith's evidentiary objections and improperly weighing the evidence in Zenith's favor, Zenith did not satisfy its initial burden as the party moving for summary judgment, and triable issues of material fact exist regarding decedent's exposure to asbestos contained in Zenith products. We find no error and affirm.

**FACTUAL AND PROCEDURAL SUMMARY**

Decedent was born in 1935 and died of mesothelioma in 2011. In 2012, appellants sued various defendants, including Zenith, for wrongful death based on theories of negligence and strict liability. They alleged decedent developed mesothelioma as a result of his exposure to asbestos contained in defendants' products. As relevant to Zenith, appellants alleged decedent repaired televisions as a hobby from the 1950's to the 1990's and had a television repair shop from 1978 to 1983.

Zenith moved for summary judgment based on lack of evidence of decedent's exposure to a specific Zenith asbestos-containing product. Zenith argued that appellants' responses to special interrogatories contained only boilerplate conclusory allegations, and appellants' deposition testimony did not identify the models of the Zenith products decedent repaired. In particular, decedent's son, George R. Leidig, testified in deposition that he helped his father at the repair shop from 1978 to 1983 and saw him work with tube, mixed tube, and solid state Zenith televisions and radios. But he could not name any particular models and his belief that heat shield pads in radios and televisions contained asbestos was based on what decedent had told him. Zenith relied on the testimony of its person most knowledgeable, Stanley Savic, who opined that without a model number, it was impossible to determine if a particular Zenith television or radio

2

contained asbestos. According to Savic, Zenith televisions never contained asbestos and the majority of Zenith radios did not contain asbestos.

In opposition, appellants offered the testimony of Bob Darby, an engineer who had met decedent at General Motors Defense Research Lab (GM) in the 1960's and who claimed to have seen decedent work on radios and televisions, including Zeniths, from the 1960's through the 1980's. Darby testified there was asbestos around the power supplies in old television sets because he had been told that and because he could recognize asbestos by texture and sight from having used it in applications at GM. Appellants also offered the testimony of Dr. Joseph G. Jackson, a radiologist who collected vintage tube radios. Dr. Johnson stated that protective heat strips in radios from the 1930's to the 1950's appeared to be made of asbestos.

In support of the opposition, appellants also offered several litigation-related tests conducted in the 2000's that discovered asbestos in some Zenith radio models, and a report by a Zenith industrial hygienist who acknowledged that Zenith radios from the late 1930's to roughly 1941 used asbestos paper heat shields. Appellants also cited Savic's testimony that even in the 1950's a few Zenith radio models had a specification calling for asbestos heat shields. In a supplemental opposition, appellants cited to specifications for the use of asbestos heat strips in two Zenith radio models.

Zenith objected that Leidig, Darby and Dr. Jackson were not qualified to identify asbestos and their testimony was based on hearsay and lacked foundation. It objected to tests of and specifications for particular radio models as irrelevant as there was no evidence decedent worked on those models.

At the hearing on the motion, the court rejected Leidig's testimony that tube televisions contained asbestos as based on hearsay, and found Darby and Dr. Jackson were not qualified to identify the substance contained in heat shields as asbestos. The court sustained Zenith's written evidentiary objections to their testimony and to appellants' documentary evidence. The court sustained some of appellants' written evidentiary objections to Savic's declaration, specifically to his statements that Zenith televisions never contained asbestos and the majority of Zenith radios did not contain

3

asbestos. Zenith's motion for summary judgment was granted, and judgment was entered in Zenith's favor.

This appeal followed.

## DISCUSSION

### I

We review the trial court's evidentiary rulings for abuse of discretion. (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.) Abuse of discretion has been found in cases where the trial court summarily sustained all, or virtually all, evidentiary objections made by a party under circumstances indicating no individual consideration of specific, often questionable, objections. (*Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1447–1449 [blanket statement on the record sustaining 37 evidentiary objections to seven-page declaration]; *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 255 [blanket order sustaining all but one of 764 objections].)

Appellants claim the court in this case similarly abused its discretion by sustaining all of Zenith's objections "without explanation." The record does not bear out this claim. The court explained its ruling on Zenith's oral objections on the record and separately sustained its individual written objections to the testimony of Leidig, Darby and Dr. Jackson, which is what appellants principally challenge. Its rulings on the objections were not arbitrary. Rather, they were based on settled rules of evidence regarding the admissibility of opinion testimony by lay and expert witnesses.

*A. Admissibility of Lay Witness Testimony*

Unlike an expert witness, a lay witness may express opinion only based on his or her own perception, not information acquired from others. (Evid. Code, § 800, subd. (a); *People v. McAlpin* (1991) 53 Cal.3d 1289, 1306 & fn. 12 (*McAlpin*).) That is so because "[u]nlike an expert opinion, a lay opinion must involve a subject that is '"of such common knowledge that men of ordinary education could reach a conclusion as

4

intelligently as the witness."' [Citation.]" (*People v. Fiore* (2014) 227 Cal.App.4th 1362, 1384 (*Fiore*).)

Appellants argue the court sustained objections to George R. Leidig's entire testimony on a technicality but nevertheless improperly weighed its credibility. That is not what happened. The transcript of the hearing shows the court sustained Zenith's hearsay objection to Leidig's testimony that decedent repaired Zenith products containing asbestos because Leidig admitted he had no information, other than what decedent had told him, about the presence of asbestos in heat shield pads. The court also sustained Zenith's written objection to Leidig's opinion that television and radio components contained asbestos for lack of foundation because Leidig admittedly had no personal knowledge on the subject. The court's ruling was correct because, as a lay witness, Leidig could not express an opinion based on hearsay. (*McAlpin*, *supra*, 53 Cal.3d at p. 1306 & fn. 12.)

The same principle applies to Bob Darby's testimony that televisions and radios on which Darby and Leidig worked had a barrier around the power supply made of "an asbestos type material." Darby claimed his colleagues at "the metrology lab" at GM who worked on "tube type products" had told him asbestos "was used around tubes and also in the TV type applications." He also claimed to have used asbestos at GM in "flight physics type . . . high heat applications" and "when you went to the materials place to get various material, they would have it labeled as being—some sort of a commercial label. I don't remember the name." Since Darby was not qualified as an expert witness, he could not offer an opinion whether materials contained asbestos based on hearsay evidence. (*McAlpin*, *supra*, 53 Cal.3d at p. 1306 & fn. 12.)

Darby also opined that the material he saw in televisions looked like asbestos because he "was used to what the texture and the type it was." He described the material as having been pressed in "thin sheets" with a "woven type of a look" and a "rough feel on some of them," and he claimed to have replaced material he accidentally damaged in TV sets with material he took from GM. At the hearing, the court explained that while Darby could say "he saw something that was rough," he could not opine that whatever he

5

saw contained asbestos.  The court noted that "[a] sponge is rough," but that does not mean it contains asbestos.

The court was correct.  As a lay witness, Darby could testify to his observations about the texture of the material, but not to his conclusion that it contained asbestos since a lay witness may not opine about matters not within common knowledge or experience.  (Cf. *McAlpin*, *supra*, 53 Cal.3d at p. 1308 [lifeguards who recovered body from water were not qualified to express medical opinion on cause of death].)  According to Savic, "fibrous shields, insulators and barriers made of cardboard, duroid, nomex" and other materials that did not contain asbestos were used in Zenith products.  Appellants have cited no authority for the proposition that asbestos content in materials may be identified by sight and touch alone, or that such identification is a matter of common knowledge and experience.  The documentary evidence they submitted in support of the opposition indicates that the presence of asbestos in materials is determined through testing.  Regardless of his experience, a lay witness may not testify about scientific tests that require expert opinion.  (See *Fiore*, *supra*, 227 Cal.App.4th at p. 1384 ["There is no 'third category of admissible opinions provided by highly experienced, nonexpert, lay witnesses'"].)

The court did not abuse its discretion in sustaining Zenith's objections to Leidig and Darby's testimony that heat shields in televisions and radios contained asbestos as that testimony constituted improper lay witness opinion.

*B.  Admissibility of Expert Witness Testimony*

Expert witness testimony is subject to foundational challenges to the witness's qualifications, the validity of the principles or techniques upon which the witness relies, or the reliability and relevance of the facts upon which the opinion is based.  (*Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1114 (*Kudrow*).)  "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates.  Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an

6

expert." (Evid. Code, § 720, subd. (a).) "'[T]he qualifications of an expert must be related to the particular subject upon which he is giving expert testimony.' [Citation.] Consequently, 'the field of expertise must be carefully distinguished and limited' [citation], and '[q]ualifications on related subject matter are insufficient' [citation]." (*Kudrow*, at p. 1115.) """"The trial court is given considerable latitude in determining the qualifications of an expert and its ruling will not be disturbed on appeal unless a manifest abuse of discretion is shown.'""" (*Westrec Marina Management, Inc. v. Jardine Ins. Brokers Orange County, Inc.* (2000) 85 Cal.App.4th 1042, 1051.)

Appellants offered Dr. Jackson, a retired radiologist and a vintage radio collector, as an expert that asbestos heat strips were common in old radios. Dr. Jackson stated he had restored and repaired over 75 vacuum tube radios dating from the 1920's to the 1960's, was a member of the American Wireless Association, and had published an article on "Asbestos Exposure and Radio Collecting" in the association's quarterly journal. Dr. Jackson opined that he had observed heat strips in "several" radios from the 1930's, 1940's, and 1950's that were "light gray, thin, fibrous and mat-like in appearance" and "looked like they were made of asbestos," even though he had never tested them to determine their composition. He cited the manuals for two models of Zenith radios which referred to the heat strips as "asbestos strips" or "asbestos sheets," claiming that collectors regularly rely on such manuals.

Dr. Jackson testified he had received some training in interpreting chest radiographs for signs of occupational exposure, and in that training had learned about materials, such as asbestos, silica, and cotton fibers, that were occupational exposure hazards. But he did not have a degree in industrial hygiene or material science. While he claimed to rely on four of the studies appellants had offered in opposition to Zenith's motion, Dr. Jackson acknowledged that he could not judge their methodology or validity because he was not an industrial scientist and was not clear that they helped him form an opinion.

Contrary to appellants' contention, the court was not "biased" against Dr. Jackson because he was a hobbyist. It noted: "You have a gentleman who says the radios

7

contained asbestos who has no education or training in this. He's just a retired radiologist that really likes radios, has been doing it, doesn't say how he knows it's asbestos, and he has no basis on that either." The court was clearly concerned about Dr. Jackson's credentials to express expert opinion about asbestos, not about radio collection or repair. The court's conclusion that Dr. Jackson does not have asbestos-related expertise reasonably follows from his own admission that he had observed heat strips in only a limited number of radios, had not tested their composition, and had no special knowledge or expertise in identifying materials containing asbestos or critiquing tests of such materials.

Appellants compare Dr. Jackson's experience to that of Charles Ay, the expert in *Ganoe v. Metalclad Insulation Corporation* (2014) 227 Cal.App.4th 1577, who, the court noted, "had been qualified as an expert witness in over 100 asbestos-related injury cases over the past 16 years, . . . had worked as a 'pipe coverer, insulator and asbestos worker' for 25 years, [and] had been certified and trained about safety issues related to asbestos. . . ." (*Id.* at p. 1586, fn. 4.) Dr. Jackson's experience collecting and repairing vintage radios as a hobby for 25 years does not translate into a 25-year experience with asbestos since, by his own admission, very few of the radios he owned had "an asbestos strip." Dr. Jackson had not been certified on any issue related to asbestos; nor had he been qualified as an expert witness in any other asbestos case.

The court did not abuse its discretion in finding Dr. Jackson unqualified to express an expert opinion about the general presence of asbestos in radios.

### C. Documentary Evidence

Most of Zenith's written objections, which the court sustained, were to the relevance of several articles from the 1930's through the 1960's about asbestos-related lung disease. The court also sustained Zenith's objections to a few studies of particular radio models as irrelevant, lacking foundation, and hearsay. Appellants do not challenge these objections on appeal, and it is well settled that while experts may rely on scientific studies for their opinions, the studies themselves are inadmissible hearsay. (See *People v.*

8

*Dean* (2009) 174 Cal.App.4th 186, 201; *People v. Bui* (2001) 86 Cal.App.4th 1187, 1196; see also *Grimshaw v. Ford Motor Co.* (1981) 119 Cal.App.3d 757, 788–789.)

The court also sustained relevance objections to the supplemental evidence of specifications calling for asbestos strips in two Zenith radio models. Appellants do not dispute the lack of evidence that decedent worked on those models, but suggest that they are not required to establish such level of specificity. *Greathouse v. Amcord, Inc.* (1995) 35 Cal.App.4th 831, the case on which they rely, says nothing about the level of specificity with regard to proof that a product contains asbestos. The cement in that case undisputedly contained two percent asbestos per volume. (*Id*. at p. 835.) The issue was whether the decedent had used the cement of a particular company, and the court concluded that testimony by witnesses who had seen the decedent use the cement was sufficient despite its lack of specificity. (*Id*. at pp. 836–837.)

The court in this case did not sustain evidentiary objections to appellants' evidence that decedent repaired Zenith radios and televisions. But their attempt to extrapolate that the radios and televisions he repaired must have contained asbestos because an asbestos-containing component was called for in two radio models, on which decedent may or may not have worked, falls short. Evidence is not relevant if it has a tendency to prove or disprove a disputed material fact only by resort to speculative inferences. (Evid. Code, § 210; *People v. Parrison* (1982) 137 Cal.App.3d 529, 539.)

The court did not abuse its discretion in sustaining Zenith's evidentiary objections to appellants' evidence.

## II

We review the trial court's decision on a motion for summary judgment de novo, "considering all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained." (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65–66.) We view admissible evidence in the light most favorable to the non-moving party. (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 100 (*Andrews*).)

A defendant moving for summary judgment must make a prima facie showing that there are no triable issues of fact in order to meet its initial burden of production. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 861 (*Aguilar*).) However, "[i]f plaintiffs respond to comprehensive interrogatories seeking all known facts with boilerplate answers that restate their allegations, or simply provide laundry lists of people and/or documents, the burden of production will almost certainly be shifted to them once defendants move for summary judgment and properly present plaintiffs' factually devoid discovery responses." (*Andrews*, *supra*, 138 Cal.App.4th at p. 107, fn. omitted.)

Once the defendant shifts the burden, the plaintiff must make a prima facie showing that a triable issue of material fact exists. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) The plaintiff's "evidence must be of sufficient quality to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment." (*McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1105 (*McGonnell*), citing *Aguilar*, at p. 850.) In asbestos litigation, the plaintiff bears the burden of proof on the threshold issue of exposure to the defendant's asbestos-containing product. (*Id*. at p. 1103.) The mere "possibility" of exposure does not create a triable issue of fact. (*Id*. at p. 1105.)

Appellants do not dispute that their discovery responses were boilerplate and devoid of fact. But they argue Zenith needed to produce "real evidence," such as deposition testimony, that showed appellants could not prove decedent's exposure to a Zenith asbestos-containing product. Zenith did that. Its motion for summary judgment was not based solely on appellants' conclusory responses to interrogatories. Zenith also relied on appellants' inability in their deposition testimony to identify a particular model of Zenith radio or television that decedent worked on, as well as on Savic's testimony that, without a model number, it was impossible to determine if a particular Zenith product contained asbestos. The burden therefore shifted to appellants to raise a triable issue of material fact regarding decedent's exposure to asbestos through a Zenith product.

Appellants' argument that they met their burden is premised on the assumption that the court abused its discretion in sustaining Zenith's evidentiary objections to their

10

evidence and that it improperly weighed the witnesses' knowledge and credibility in Zenith's favor. It is true that, generally, "[o]nce it is established that a witness has adequate credentials to qualify as an expert, questions as to the degree of his or her expertise go to weight not admissibility." (*Kudrow*, *supra*, 208 Cal.App.4th at pp. 1120–1121.) However, an objection to the credentials of an expert witness requires the court to first rule on the admissibility of that witness's testimony. (Evid. Code, § 720, subd. (a).) Once Zenith objected to Dr. Jackson's qualifications to testify as an expert, the court's ruling went to the admissibility, not the weight, of his testimony. Similarly, Zenith's objections to Leidig's and Darby's opinion that the heat shields in radios they saw decedent repair contained asbestos went to the admissibility of such opinion testimony, not to its weight. (See *People v. Lucas* (2014) 60 Cal.4th 153, 266 ["Opinion evidence given by a lay witness is admissible 'as is permitted by law'"].)

Because the court properly sustained Zenith's evidentiary objections, the evidence appellants offered to prove that decedent was exposed to a Zenith asbestos-containing product is inadmissible, and appellants cannot rely on it to make a prima facie case. Appellants insist that Zenith has failed to prove that its products did not contain asbestos, and they specifically rely on its admission that "asbestos paper" was used as a heat shield in some Zenith radios from the late 1930's to at least 1941. But since there is no evidence that decedent worked on radios from that period generally or on the specific models that contained asbestos paper, any inference that he was exposed to asbestos would be speculative. In that sense, this case is similar to *McGonnell*, *supra*, 98 Cal.App.4th 1098, where there was evidence that joint compound manufactured by Kaiser Gypsum Company, Inc., possibly containing asbestos, was delivered to a contractor several years before the decedent's employment. The court concluded that such evidence gave rise to a chain of inferences resulting in conjecture that "at some time [the decedent] might have cut into a wall that might have contained Kaiser joint compound that might have contained asbestos." (*Id*. at p. 1105.) Similarly, here, appellants' evidence would require the trier of fact to speculate that at some point,

decedent repaired a Zenith radio model that might have contained asbestos paper as a heat shield.

Because appellants have not raised a triable issue of material fact regarding decedent's exposure to asbestos from a Zenith product, summary judgment for Zenith is in order.

## DISPOSITION

The judgment is affirmed.  Zenith is entitled to its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        EPSTEIN, P. J.

We concur:


MANELLA, J.


COLLINS, J.

12