**Peggy H. TERRELL, Plaintiff,**

**v.**

**USAIR, INC., Defendant.**

**No. 94–245–Civ–ORL–22.**

United States District Court,
M.D. Florida,
Orlando Division.

Feb. 9, 1996.

Thomas J. Pilacek, Thomas J. Pilacek & Associates, Maitland, FL, Howard J. Needle, Owings Mills, MD, for Peggy H. Terrell.

Vasilis C. Katsafanas, Jackson, Lewis, Schnitzler & Krupman, Orlando, FL, for USAir.

## ORDER

CONWAY, District Judge.

This cause comes before the Court for consideration of Defendant USAir Inc.'s Renewed Motion for Summary Judgment (Doc. 49) and Plaintiff Peggy H. Terrell's Memorandum in Opposition to USAir Inc.'s Renewed Motion for Summary Judgment (Doc. 51).

## I. Background

Plaintiff has been employed by USAir (or its predecessor Piedmont Aviation) since 1982 as a Reservations Sales Agent.[1] Plaintiff's job entails sitting at a computer terminal, taking calls from people with inquiries or seeking to make flight arrangements on USAir, providing information and making appropriate arrangements; the job requires

---

**1.** Plaintiff was employed in Reston, Virginia by USAir, or its predecessor Piedmont Aviation, and transferred to the Orlando Reservations Center in 1991 when the Reston Reservation Center was closed. (Terrell Depo. at 7, 12, 29 & 50).

Plaintiff to constantly type on a keyboard or telephone keypad.[2] In October 1991 Plaintiff filed a workers' compensation claim alleging she had developed carpal tunnel syndrome because of her job.[3]

Plaintiff was treated by Dr. George White who prescribed the following restrictions on Plaintiff's work period on three separate occasions: limit of four hours of work per day for three days (December 1991); limit of four hours per day for two weeks then six hours per day for another two weeks (January 1992); limit of six hours per day (March 1992).[4] Plaintiff's schedule was modified as requested each time, and she worked under the six hour restriction until June 23, 1992, when a limit of four hours per day was requested. From that time on Plaintiff worked four hours per day.[5]

In October 1992 a second doctor, Dr. Foncea, recommended surgery for Plaintiff's condition and requested that the four hour restriction on her workday continue. Plaintiff underwent surgery in December 1992 and was unable to work between December 9, 1992 and April 19,1993.[6] Ten days after Plaintiff's return to work, Dr. Foncea requested Plaintiff remain restricted to the four-hour limitation and USAir accommodated the request.[7]

Dr. Foncea also requested that USAir modify the Plaintiff's work station[8] "according to advice" on March 2, 1993. Plaintiff understood the modifications to include a drop keyboard, although it is unclear when this "advice" requiring a drop keyboard, provided by Plaintiff's rehabilitation nurse, was communicated to USAir.[9] When Plaintiff returned to work on April 19, 1993, she was not immediately provided with a drop keyboard.[10] Instead, she was told to use the position with the drop keyboard when it was available.[11] Around May 4, Plaintiff complained to her supervisor of increased pain and was told that, in the event a drop keyboard was unavailable, to simply listen in on other agents' calls.[12] Plaintiff was placed on medical leave in May 1993 and did not actually use her own drop keyboard until her return to USAir as a part-time reservations agent in April 1994.[13]

Throughout 1992 and until February 8, 1993, Plaintiff received her full salary under USAir's salary continuance program, which paid the difference between Plaintiff's workers compensation benefit amount and Plaintiff's full-time pay.[14] Defendant states that salary continuance was discontinued on February 8,1993, when Plaintiff was placed on medical leave.[15] When Plaintiff returned to work in April 1993, she was compensated only for the hours actually worked and she was placed on medical leave for a second time on May 28, 1993.[16]

Plaintiff claims USAir discriminated against her in violation of the Americans with Disabilities Act (ADA), and the Age Discrimination in Employment Act (ADEA) in failing to reasonably accommodate her by timely providing a drop keyboard or by placing her in a part-time position, rather than on medical leave.

**2.** Terrell Depo. at 13–28, 34–36.

**3.** Terrell Depo. at 47 & 66; Barr Depo. at ¶ 6.

**4.** Terrell Depo. at 66, 69–72; Barr Depo. at ¶ 7.

**5.** Terrell Depo. at 72–73; Barr at ¶¶ 8–9.

**6.** Terrell Depo. at 75–81.

**7.** Terrell Depo. at 80–83; Barr Depo. at ¶¶ 11–12.

**8.** Terrell Depo., Def. Exh. 20. Dr. Foncea's prescription actually says "OK—to modify work environment according to advice." It does not specifically state that a drop keyboard must be installed.

**9.** Terrell Depo. at 78–79.

**10.** Terrell Depo. at 86.

**11.** Terrell Depo. at 86.

**12.** Terrell Depo. at 87.

**13.** Terrell Depo. at 116.

**14.** Terrell Depo. 100–103; Barr Depo. at ¶¶ 14–15.

**15.** Barr Depo. at ¶ 16; Plaintiff states that her salary continuance ceased on January 17,1993, Terrell Depo. at 102.

**16.** Barr Depo. at ¶ 21.

## II. Americans with Disabilities Act (ADA)

█ The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A qualified individual with a disability as defined by the ADA is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such an individual holds or desires." 42 U.S.C. § 12111(8). To state a cause of action under the ADA, the Plaintiff must show that she: 1) is a disabled person within the meaning of the ADA; 2) is qualified, with or without accommodation, to perform the essential functions of the job at issue; 3) was terminated or denied certain employment benefits, for which he was otherwise eligible, by a covered entity;[17] and 4) such termination or denial of benefits was based upon a disability. 42 U.S.C. § 12112(a); *Harding v. Winn–Dixie Stores, Inc.,* 907 F.Supp. 386, 390 (M.D.Fla.1995) (citing *Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir.1993), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61); *see also White v. York Int'l Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995) (citing illustrative cases). USAir contends that Plaintiff does not meet two elements required to state a claim because she cannot establish that she is a person with a disability; and she cannot establish that she is qualified to perform the essential functions of the job at issue or that she could be reasonably accommodated to do so.

## III. Standard for Summary Judgment

Summary judgment is only appropriate where it appears from the pleadings, depositions, admissions, and affidavits that there is no "genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 918 (11th Cir.1993).

The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

## IV. Application to the Facts

### A. Disabled person

USAir contends that Plaintiff is not a disabled person within the meaning of the ADA and, thus, she does not meet the first element of the four-pronged test. Under the ADA a disability is defined as a "physical or mental impairment which substantially limits one or more of such person's major life activities," record of such impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).

USAir contends that Plaintiff is not a disabled person because she is not substantially limited in a major life activity. USAir does not argue that Plaintiff is not impaired; it argues that Plaintiff is not significantly impaired such that her carpal tunnel syndrome is a substantial limitation of a major life activity. USAir properly cites *McKay v. Toyota Motor Mfg.,* 878 F.Supp. 1012, 1015 (E.D.Ky.1995), for the proposition that Plaintiff's carpal tunnel syndrome does not make her an individual with a disability under the ADA as a matter of law.

---

**17.** The term "covered entity" is further defined within the ADA at 42 U.S.C. § 12111(2) as "an employer, employment agency, labor organization, or joint labor management committee."

In *McKay,* the court determined that the plaintiff, a 24–year old college graduate working on earning her teaching certificate, was not substantially limited in the major life activity of working because she did not establish that she was significantly restricted in her ability to perform a class of jobs. *McKay,* 878 F.Supp. at 1014. The plaintiff in *McKay* had 10% disability in her right arm and 6% impairment in her body as a whole, and, more importantly, failed to show she was significantly limited from performing work other than repetitive factory work, as required in automotive assembly. *Id.* at 1015.

Some courts considering the claims of plaintiffs with carpal tunnel syndrome have held the plaintiff's impairment does not qualify as a disability. *See, e.g., McKay v. Toyota Motor Mfg.,* 878 F.Supp. 1012, 1014 (E.D.Ky. 1995) (plaintiff with 6% permanent impairment to body not disabled under ADA because she was not limited by carpal tunnel syndrome in performing numerous other jobs); *Fink v. Kitzman,* 881 F.Supp. 1347, 1377 (N.D.Iowa 1995) (a lifting restriction, without any other limitation, not a substantial limitation of major life activity). In other cases, defendants have stipulated to or the court has found that the plaintiff's carpal tunnel syndrome is debilitating enough to qualify as a "disability" under the ADA, or at least a factual issue exists. *See Smith v. Kitterman, Inc.,* 897 F.Supp. 423, 428 (W.D.Mo.1995) (denying summary judgment to employer on whether or not plaintiff is significantly restricted in major life activity of working); *Pegues v. Emerson Electric Co.,* 913 F.Supp. 976 (N.D.Miss. 1996) (defendants did not dispute that plaintiff with bilateral carpal tunnel syndrome was disabled); *Lawrence v. IBP, Inc.,* No. 94–2027, 1995 WL 261144 (D.Kan. Apr.21, 1995) (defendant conceded plaintiff, who required surgery on both hands, disabled within meaning of ADA).

The facts of this case are closer to those finding a triable issue as to Plaintiff's disability. *See, e.g., Smith v. Kitterman, Inc.,* 897 F.Supp. 423 (W.D.Mo.1995); *Pegues v. Emerson Electric Co.,* 913 F.Supp. 976 (N.D.Miss. 1996). The plaintiff in *Smith* was 42 years old and had been employed at the defendant employer for 25 years before her termination, had never completed high school, and had no other job or vocational training. *Smith,* 897 F.Supp. at 427. The plaintiff in *Pegues* worked for the defendant employer for 21 years (her entire career) before termination, had an eighth-grade education, and no GED. *Pegues,* 913 F.Supp. at 977–78.

In determining whether an impairment substantially limits a major life activity, the Court should consider the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact resulting from the impairment. 29 C.F.R. § 1630.2(j)(2); *see also McKay,* 878 F.Supp. at 1014. Additionally, the Court may also consider three other factors:

(A) The geographical areas to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographic area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographic area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3) (1995).

In this case Plaintiff, who is 54 years old, is a thirteen-year employee of USAir, with a high-school equivalency degree and no college degree (but some coursework). Plaintiff cannot repetitively type beyond a four-hour period. Plaintiff states that she is fully capable of testifying about the limitations on her work activities, limited work hours, required hourly breaks, and the need for a drop keyboard. (Doc. 51, p. 6). The Court agrees that Plaintiff is fully capable of testifying about the nature and severity of her impairment. Even the testimony of Plaintiff's doc-

tors, however, would not show that Plaintiff is restricted from performing "a class of jobs."

Plaintiff contends that she "does not need to present a vocational expert on her behalf." (Doc. 51, p. 5). However, without such evidence, it is difficult for the Court to assess "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within [this] geographic area." *See* 29 C.F.R. § 1630.2(j)(3) (1995). Further Plaintiff's evidence does not address Plaintiff's vocational training, the geographical area to which she has access, or the number and type of jobs demanding similar training from which Plaintiff would also be disqualified; Plaintiff's evidence goes only to the nature and severity, duration, and impact of her impairment. *Compare Bolton v. Scrivner, Inc.,* 36 F.3d 939, 944 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995) (affirming grant of summary judgment to employer where former employee with ADA claim did not come forward with evidence of whether plaintiff would be restricted from performing a class of jobs); *Zatarain v. WDSU–Television, Inc.,* 881 F.Supp. 240, 244 (E.D.La.1995) (plaintiff's failed to establish disabled because evidence of limitation from performing a class of jobs "totally lacking").

■ Alternatively Plaintiff contends that her testimony is also sufficient to present a triable issue on whether her carpal tunnel syndrome "substantially limits" the major life activity of caring for oneself. Plaintiff states that "her daily activities are limited by great pain and discomfort in her wrists and arms, and substantial loss of strength and grip in her hands and arms." (Doc. 51, p. 8). Plaintiff lists the routine tasks that she must perform with adjustment, including: carry groceries only in light bags; carry laundry in small loads; obtain assistance to move furniture, open cans; properly make a bed. (Doc. 51 at 8). She cannot "effectively" brush her teeth or hair and experiences discomfort in gripping the steering wheel while driving a car. *Id.* Plaintiff argues that the issue of whether she is substantially limited in caring for herself is a factual issue for the jury to decide. However, the Fifth Circuit has

weighed a set of facts directly on point and found there to be no triable issue of fact for the jury. *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir.1995). In *Dutcher* the plaintiff argued that she was substantially limited in the major life activity of caring for herself. *Id.* The Fifth Circuit disagreed since the plaintiff could "feed herself, drive a car, attend her grooming, carry groceries, wash dishes, vacuum, and pick up trash with her impaired hand;" the plaintiff was able to " 'take care of the normal activities of daily living.' " *Id.* So can Plaintiff in this case; Plaintiff is not substantially limited in the major life activity of caring for herself.

There being no issue of triable fact on whether Plaintiff is disabled under the ADA, summary judgment is warranted on this issue.

## B.   Reasonable Accommodation

■ The analysis of summary judgment motions on an ADA claim for failure to reasonably accommodate differs somewhat from conventional summary judgment analysis. In a case of disability discrimination, once the plaintiff produces evidence sufficient to make a facial showing that accommodation is possible, the burden of production shifts to the employer to present evidence of its inability to accommodate. *White v. York Int'l Corp.,* 45 F.3d 357, 361 (10th Cir.1995). If the employer presents such evidence, the plaintiff may not simply rest on her pleadings, instead she " 'has the burden of coming forward with evidence concerning her individual capabilities and suggestions for possible accommodations to rebut the employer's evidence.' " *Id.* (quoting *Prewitt v. United States Postal Serv.,* 662 F.2d 292, 308 (5th Cir.1981 Unit A)). As with most discrimination cases, the plaintiff at all times bears the ultimate burden of persuading the trier of fact that he has been the victim of illegal discrimination based on her disability. *Id.* (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–11, 113 S.Ct. 2742, 2747–49, 125 L.Ed.2d 407 (1993)).

■ Assuming *arguendo* that Plaintiff is a qualified individual with a disability, USAir argues that it properly accommodated the restrictions on Plaintiff's work. USAir con-

tends that it accommodated Plaintiff by allowing her to work a limited schedule and by providing salary continuance for over one year, even though the written policy was a maximum of two months. (Doc. 50 at 12). Plaintiff contends that of the accommodations USAir · provided to her, the lengthy delay in provision of the drop keyboard was unreasonable. Plaintiff argues that she did not receive the drop keyboard for thirteen months, from March 1993 to April 1994. (Doc. 51 at 9). However, USAir appropriately points out that Plaintiff was placed on medical leave as of May 1993 and the drop keyboard was not installed until Plaintiff actually returned to work, in a part-time position, in April 1994. (Barr Depo. at ¶¶ 23–24). The Court finds that the true delay in USAir's installation of the keyboard was no more than one month, once the time Plaintiff was on medical leave is properly deducted, and this delay is not unreasonable as a matter of law.[18]

The next issue is whether USAir reasonably accommodated Plaintiff when it placed her on medical leave and did not create a part-time position for her. Plaintiff must produce sufficient evidence to make a facial showing that she could perform the essential functions of the job with reasonable accommodation. *See White*, 45 F.3d at 361. Plaintiff's evidence indicates that she performed the customer service portion of her job well. (Bean Depo. at 15). However, she was limited in the typing portion of her job to no more than four hours per day, even with the drop keyboard, and cannot perform the essential functions without reasonable accommodation. (Terrell Depo. at 116–117).

▪ Plaintiff apparently argues that USAir's "reasonable accommodation" of her impairment would have been for USAir to transfer her to a part-time position, to work four hours per day. *See* Doc. 51 at 11–14. Plaintiff argues that USAir should have made her a part-time employee, and should not have put her on medical leave in February 1993 or in May 1993. For support, Plaintiff points to 42 U.S.C. § 12111(9) and 29 C.F.R. 1630.2(*o*)(2)(ii), both of which suggest a part-time position as a reasonable accommodation under the ADA. However, the ADA "does not require an employer to promote a disabled employee as an accommodation, nor must an employer reassign the employee to an occupied position, nor must the employer create a new position to accommodate the disabled worker." *White*, 45 F.3d at 362.

USAir concedes that assigning an employee to a vacant position may be a reasonable accommodation under the ADA. (Doc. 50 at 13). However USAir further explains that, at the time Plaintiff exhausted the "limited duty" available under its policies, no part-time agent positions existed, no less vacancies in such non-existent positions (Doc. 50 at 14). All part-time reservations agents had been furloughed during 1990 and 1991, and since there were no vacant part-time positions to which Plaintiff could be assigned, USAir placed her on medical leave. (Doc. 50 at 14).[19]

Plaintiff contends that she has created a genuine issue of material fact as to whether the Defendant had an existing part-time or limited duty position available. (Doc. 51 at 14). In truth, Plaintiff has merely argued that she had the capacity to work on a part-time basis and that, in her opinion, the shifts of other reservation agents could have been staggered to accommodate a four-hour shift for her.[20] The only evidence Plaintiff has

---

18. Plaintiff cites a case in which summary judgment was granted to the employer on the issue of reasonable accommodation, where the keyboard was installed within one month for an employee with carpal tunnel syndrome. *Feliberty v. Kemper Corp.*, No. 94–C–5684, 1995 WL 35398, 1995 U.S. Dist. LEXIS 1020 (N.D.Ill. Jan. 26, 1995).

19. Plaintiff states that "Defendant cites no deposition testimony, affidavit, or other exhibit suggesting its proposition that no part-time positions existed at certain periods of time." (Doc. 51, p. 13). However, Plaintiff *herself* relies on Barr's

Deposition, which clearly states that part-time positions were not created until 1994, well after Plaintiff took medical leave in May 1993.

20. Plaintiff argues:

As stated elsewhere, it is not an undue burden on USAir, Inc. to put [Plaintiff] on part-time duty in the Orlando Reservation Center, where staggered shifts call for employees to come and go throughout the day. It is easy to make the Plaintiff's work station available to her four (4) hours per day and schedule it to be occupied the other hours of the workday.

produced that points to the existence of part-time positions is the Deposition of Willetta Barr (the Office Administrator of the Orlando USAir Reservation Center), which reports the existence of other part-time positions. (Attached to Doc. 51, Ex. N, ¶¶ 29, 30, 32). However, this evidence actually weighs in favor of USAir because the part-time positions Barr describes were actually created in 1994, well after Plaintiff was placed on medical leave in May 1993, and Plaintiff was one of the individuals hired into these newly-created part-time positions. In sum, when Plaintiff's limited duty expired there were no part-time agent positions in existence, and as soon as part-time positions were created, Plaintiff was placed in one.

Plaintiff fails to provide any evidence, beyond her conclusory suppositions, that part-time positions existed in February 1993 or May 1993, the times when she was placed on medical leave. *See Howell v. Michelin Tire Corp.*, 860 F.Supp. 1488 (M.D.Ala.1994) (reasonable accommodation does not require that employer create a light-duty position or new permanent position for disabled employee); *see also Reigel v. Kaiser Found. Health Plan of N.C.*, 859 F.Supp. 963 (E.D.N.C.1994) (ADA does not require employer to make fundamental or substantial modifications in its operations to assure every disabled individual the benefit of employment); *compare Tuck v. HCA Health Services of Tenn.*, 842 F.Supp. 988, 993–94 (M.D.Tenn.1992), *aff'd*, 7 F.3d 465 (1993) (employer hospital failed to reasonably accommodate when did not offer nurse opportunity for reduced shifts being advertised).

■ Plaintiff alternatively argues that she could have remained on light duty indefinitely, rather than been placed on medical leave.[21] Given the nature of the reservations agent position, as Plaintiff has described it, "light duty" would require the equivalent repetitive typing motions of the full-time position, only for a shorter period of time; this is in effect then a part-time position. Again, Plaintiff fails to point to any evidence that would support the feasibility of such an indefinite "light-duty" status. USAir cites the EEOC *Technical Assistance Manual* § 9.4, which addresses this exact scenario. In § 9.4, the EEOC distinguishes between "heavy duty" positions and "light duty" positions, which generally involve totally different tasks, and states, "[c]reating such positions by restructuring is not required by the ADA." *See EEOC Technical Assistance Manual* § 9.4, Attached to Doc. 50, Ex. C; *see also Howell v. Michelin Tire Corp.*, 860 F.Supp. 1488 (M.D.Ala.1994). USAir has no duty to create a permanent or indefinite light duty position for Plaintiff.

■ Plaintiff's conclusory allegations that USAir could accommodate her four-hour limitation, through indefinite "light-duty" or through part-time employment, are insufficient to meet her burden of proving that accommodation was possible. *See White v. York Int'l*, 45 F.3d 357, 362 (10th Cir.1995). Plaintiff has failed to produce a triable issue of material fact and USAir is entitled to judgment as a matter of law on the issue of reasonable accommodation.

## V. Age Discrimination

■ Plaintiff also alleges that she was treated differently from other employees whose doctors requested a drop keyboard, on the basis of her age. Plaintiff asserts that "younger employees" were provided with drop keyboards sooner than she was. Plaintiff, in one paragraph, responds to USAir's argument for summary judgment of the ADEA claim by simply providing a list of coworkers who received modified stations and by providing the names of two coworkers who Plaintiff believed to be younger than herself, Nelly Bordatto and Pandora Weeks, who allegedly received drop keyboards sooner than Plaintiff because of their younger ages.[22] No depositions or affidavits were provided for any of the named coworkers to support Plaintiff's allegations.

Doc. 51 at 13.

**21.** "Plaintiff was perfectly able to work limited duty four hours per day at a drop keyboard when she was placed on medical leave of absence for no good reason ..." (Doc. 51 at 11).

**22.** Terrell Depo. at 143–44.

In addition the Court has already determined that Plaintiff was without the drop keyboard for no more than a month, once the time she spent on medical leave is deducted. Thus, Plaintiff was reasonably accommodated by USAir as a matter of law. USAir is entitled to summary judgment as a matter of law on the ADEA claim.

## VI. Conclusion

Plaintiff has failed to produce evidence of a triable issue on elements required to state claims for relief under the ADA and the ADEA. Plaintiff did not produce enough evidence to establish that she is a qualified person with a disability under the ADA. Plaintiff has failed to show she is substantially limited in the major life activity of working because she provides no evidence of her disqualification from performing a class of jobs. Plaintiff has also failed to create a genuine issue of material fact about whether she was reasonably accommodated by USAir, and whether USAir failed to accommodate her reasonably because of her age. USAir is entitled to summary judgment as a matter of law on the ADA and the ADEA claims.

Based on the foregoing it is ORDERED as follows:

1. Defendant's Motion for Summary Judgment (Doc. 49) is GRANTED.

2. This case is REMOVED from the March 1996 trial calendar.

3. All other pending motions are DENIED as moot.

4. The Clerk is directed to enter judgment in favor of Defendant USAir, Inc. and to CLOSE this file.