Filed 1/27/14  Messina v. Escondido Union High School Dist. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CONSTANCE J. MESSINA,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>ESCONDIDO UNION HIGH SCHOOL DISTRICT et al.,<br><br>　　　Defendants and Respondents. | D061487<br><br><br>(Super. Ct. No. 37-2010-00056390-CU-WT-NC) |

APPEAL from a judgment of the Superior Court of San Diego County,

Jacqueline M. Stern, Judge.  Affirmed.

The Law Firm of Shane C. Brengle and Shane Brengle for Plaintiff and Appellant.

Stutz Artiano Shinoff & Holtz, Daniel R. Shinoff and Paul V. Carelli IV, for

Defendants and Respondents.

Constance J. Messina appeals from summary judgment in favor of the Escondido

Union High School District (District) on her complaint for, among other causes of action,

age discrimination and failure to reasonably accommodate her disability in violation of

California's Fair Employment and Housing Act (FEHA).  (Gov. Code, § 12900 et seq.)  She contends the trial court improperly excluded certain evidence she offered in opposition to the District's summary judgment motion.  She further contends her evidence raised triable issues of material fact as to (1) whether the District's stated reasons for not rehiring her after her probationary period were pretextual, and (2) whether the District's accommodations of her disability were timely.  We agree the court erred in excluding some of Messina's evidence.  However, even after considering the improperly excluded evidence, we conclude the court correctly determined the District was entitled to summary judgment.  We, therefore, affirm the judgment.

## BACKGROUND[1]

*Age Discrimination Claim*

When Messina was 59 years old, the District hired her on a probationary basis as a high school counselor.  Under the terms of her employment, the District could discharge her during her probationary period for any nondiscriminatory reason.

---

[1]     We base our factual summary on the evidence that was both admitted by the trial court and included in the appellate record.  Except as noted in part I of our discussion, *post*, we did not consider any evidence excluded by the superior court or any of the exhibits Messina lodged with the superior court because Messina did not provide the exhibits to us.  (See Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2013) ¶ 4:4.2, p. 4-3 ["Appellant cannot argue that trial exhibits (whether admitted into evidence, rejected or lodged) undermine the judgment when those exhibits are not *transmitted* to the appellate court"], citing *Hiser v. Bell Helicopter Textron Inc.* (2003) 111 Cal.App.4th 640, 656-657; *Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 291.)

Eight months after the District hired Messina, the head counselor sent then principal Diego Ochoa a letter complaining about Messina's unprofessional and aggressive behavior. Some of the behavior dated back to the beginning of Messina's employment with the District. The head counselor stated Messina rudely interrupted her during a counseling meeting, snapped her fingers at her and told her to rush through her presentation. Messina stated in a declaration the head counselor's complaints were later dismissed as unsubstantiated, but Messina admitted during her deposition she spoke to the head counselor in an unpleasant tone and snapped her fingers during the presentation. According to Messina, she was trying to express the concept of rapid succession and to get the head counselor to move along the presentation. Messina believed the head counselor felt disrespected because the head counselor was a former gang member and was easily offended.

The same month, Ochoa evaluated Messina's performance. The performance evaluation included both commendations and recommendations and rated Messina as not meeting the District's standards. Messina agreed with the commendations, but not the recommendations or the rating.

About eight months later, an employee complained to Ochoa's successor, Robert Clay,[2] that Messina had been taking extended lunch breaks. Clay sent Messina an e-mail informing her of the complaint. He later gave Messina a formal written warning about

_____

[2] Clay was a named defendant below, but he was not a party to any of the causes of action at issue in this appeal.

3

taking extended lunch breaks.  Messina denied taking extended lunch breaks, except on one occasion for a doctor's appointment.  She acknowledged, however, if the allegation were true, it would not have been inappropriate for Clay to send the e-mail to her.  She also acknowledged Clay actually believed she had been taking extended lunch breaks.

A couple of months later, a special education administrator sent an e-mail to Messina indicating Messina inappropriately referred a student to special education without first utilizing lower level interventions as required by the school's policy.  After Messina made another inappropriate referral, the administrator sent an e-mail to Clay expressing concern about Messina's professionalism and ethics.  In particular, the administrator believed Messina's actions "undermined the professional direction provided by our professional school psychologist."  Clay subsequently reprimanded Messina for making inappropriate referrals.  Although Messina believed her referrals were appropriate because she followed protocol and because the students she referred were extreme cases, she acknowledged Clay actually believed otherwise.

Around the same time, Clay evaluated Messina's performance.  Like Ochoa's evaluation, Clay's evaluation included both commendations and recommendations.  It also rated Messina as not meeting the District's standards.  Messina agreed with the commendations, but not the recommendations or the rating.  Nonetheless, she acknowledged Clay actually believed her performance was not moving "in an acceptable and progressive manner."

A month later, Clay observed and evaluated one of Messina's counseling sessions. The evaluation contained both commendations and recommendations.  It also detailed

4

Clay's concerns about Messina's actions during the session. Among these concerns, Messina did not recommend the student enroll in a second semester of English, which is counter to the routine practice of the other counselors and the school administration's expectations. In addition, Messina played loud, baroque music during the counseling session and did not make any follow-up commitment to talk with the student's parent after learning the parent had not received certain information in the mail. Messina agreed with the commendations in the evaluation, but she thought the identified concerns were nitpicking.

Three months later, near the end of Messina's probationary period and the day before Messina turned 61, the District notified her it had decided not to rehire her for the following school year. According to Messina, the stated reasons for the District's decision were she was not a team player, she was hard to get along with, she did not support the head counselor, and she had taken extended lunch breaks every day during one month. Although Messina did not believe the stated reasons were true, she acknowledged any of them would be grounds for not rehiring her if they had been true.

Messina believed the District's decision amounted to age discrimination because, while the District elected not to rehire her, it elected to retain all of the younger probationary counselors. Messina acknowledged, however, she did not know whether the younger counselors had had any unfavorable performance evaluations or disciplinary actions.

In addition, in Messina's view, Clay treated the younger counselors more amiably, implemented more of their suggestions, and invited them to meetings from which

5

Messina and Vilma Everette, another older counselor, were excluded. He also gave them additional responsibilities with additional pay.

Moreover, Messina believed age discrimination was implied in the various remarks made about her job performance and ability to get along with others. She explained throughout her deposition why she believed her superiors were mistaken in their views about her performance and provided declarations to support her position. She, nonetheless, acknowledged her superiors actually perceived she was not a team player, was hard to get along with, and did not cooperate with other counselors.

As further support for her age discrimination claim, Messina provided a declaration from Everette stating Clay referred to the other counselors as "the young ones" when speaking to Messina and Everette. Everette additionally accused others working for Clay of making ageist remarks, including the head counselor, who purportedly blamed Everette's forgetfulness on Everette's age, and the vice principal, who purportedly commented that older people could not do the same things as younger people and the school needed to have younger people because the older people would not always be around. Everette and a union representative also related anecdotes of older employees being reassigned to less favorable positions ostensibly because of their age.

*Failure to Reasonably Accommodate Claim*

According to Messina, 90 percent of her work involved sitting and typing. During her second year with the District, Messina complained about wrist pain and asked for wrist supports. Within two weeks, the District performed an ergonomic assessment of her workstation and raised her computer to eye level. The following month, the District

6

provided her with an ergonomic chair and sometime later it provided her with a document tray. Messina testified at her deposition these were reasonable accommodations.

The same month the District performed the ergonomic assessment, Messina went to a doctor who eventually diagnosed her with carpal tunnel syndrome. The doctor restricted her typing to two hours in the morning and two hours in the afternoon. The District accepted the restriction. Seven months after her doctor imposed the restriction, Messina was required to work overtime some evenings and the District provided her with clerical support. The clerical support continued for approximately a month until Messina went on medical leave to have surgery. Messina testified at her deposition these were reasonable accommodations as well.

## DISCUSSION

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.] Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)

# I

## *Rulings on Evidentiary Objections*

Preliminarily, we address Messina's contention the court erred in sustaining objections to portions of declarations she and Everette submitted in opposition to the summary judgment motion.[3] "Evidence submitted for or against a motion for summary judgment must be admissible if being offered at trial." (*Kincaid v. Kincaid* (2011) 197 Cal.App.4th 75, 82.) Although the California Supreme Court has not decided the matter (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535), the majority view is that an appellate court reviews the trial court's evidentiary rulings on summary judgment for abuse of discretion. (*Kincaid v. Kincaid*, *supra*, at pp. 82-83.) If we determine any evidence was improperly excluded, we consider the evidence in reviewing the correctness of the court's summary judgment ruling. (See, e.g., *Nazir v. United Airlines*, Inc. (2009) 178 Cal.App.4th 243, 257.)

## A

### *Objections to Messina's Declaration*

#### 1

In reference to the complaint about her taking extended lunch breaks, Messina stated in her declaration she was late coming back from a doctor's appointment one time. She also stated it was the only instance during her entire employment with the District in

---

[3]    The District raised over 300 evidentiary objections below. The court sustained most of them, substantially narrowing the evidentiary record on appeal.

which she was late coming back from lunch. The District objected to statements on the ground they contradicted Messina's deposition testimony, and the court sustained the objection.

The parties agreed a court deciding a summary judgment motion may disregard a party's declaration statement if the statement contradicts the party's deposition testimony. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 (*D'Amico*); *Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 860.) However, Messina contends the court erred in sustaining the District's objection in this instance because her declaration statements were not inconsistent with her deposition testimony. The District concedes the error.

2

Messina stated in her declaration that during her second year with the District, "[m]any of the older staff members, including counselors, were replaced with younger models." The District objected to this statement on the grounds it lacked foundation and called for speculation. The District also objected to this statement on the grounds it was vague, ambiguous, and unintelligible as to "many." The court sustained the objections on lack of foundation, speculation, and relevancy grounds.

Messina contends the court erred in sustaining the District's objections because her statement was based on her personal knowledge. We disagree.

Relevant evidence is evidence tending in reason to prove or disprove a disputed material fact. (Evid. Code, § 210; *People v. Lewis* (2001) 25 Cal.4th 610, 639-640.) Conversely, evidence is not relevant if it has a tendency to prove or disprove a disputed

9

material fact only by resort to speculative or conjectural inferences or deductions. (*People v. Parrison* (1982) 137 Cal.App.3d 529, 539.)

As the District points out, Messina's statement suggests the District terminated older employees to make way for younger ones. However, Messina's declaration contains no foundational facts showing she had personal knowledge of older workers being terminated or that their age was the reason for their termination (as opposed to retirement, job changes, or other neutral circumstances). Absent such foundation, any inference to be drawn from Messina's statement is speculative and irrelevant. Thus, the court properly sustained the District's objections to the statement.

3

Messina stated in her declaration she had received what she considered to be reasonable accommodations, but the accommodations did not happen right away and she did not receive clerical support until more than seven months after she developed carpal tunnel syndrome and her doctor restricted her typing. The District objected to this statement on the grounds it was improper opinion testimony and contradicted her earlier deposition testimony. The court sustained the objection on both grounds.

Messina contends the court erred in sustaining the objections as to the portion of the statement dealing with the timing of the accommodations because this portion was not an opinion and she never testified about the timing of the accommodations during her deposition. We agree.

As previously noted, when deciding a summary judgment motion, a court may disregard a party's declaration statement if the statement contradicts the party's deposition

10

testimony. (*D'Amico*, *supra*, 11 Cal.3d at p. 22; *Benavidez v. San Jose Police Dept.*, *supra*, 71 Cal.App.4th at p. 860.) Sometimes referred to as the *D'Amico* rule, this rule is "limited to instances where 'credible [discovery] admissions . . . [are] contradicted *only* by self-serving declarations of a party.' [Citations.] In a nutshell, the rule bars a party opposing summary judgment from filing a declaration that purports to impeach his or her own prior sworn testimony." (*Scalf v. D.B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1521-1522.)

While Messina testified at her deposition she believed the accommodations the District ultimately provided her were reasonable, it does not appear the District's counsel ever asked her whether she believed the District provided the accommodations in a timely manner, even though untimeliness was one of the bases for her failure to reasonably accommodate claim. To the contrary, when she started to testify about how long it took the District to provide the accommodations, the District's counsel redirected the questioning away from the issue. Accordingly, we cannot conclude the challenged statement in her declaration amounted to an impeachment of her deposition testimony.

Moreover, the District did not challenge and the court did not exclude other statements in Messina's declaration about the timing of the District's accommodations. Nonetheless, the court apparently ignored this evidence because the court did not discuss it in its ruling and instead granted the District's summary judgment motion as to Messina's failure to reasonably accommodate claim based solely on Messina's deposition testimony. The *D'Amico* rule "does not countenance ignoring other credible evidence that contradicts or explains that party's answers or otherwise demonstrates there are

11

genuine issues of factual dispute." (*Scalf v. D.B. Log Homes, Inc.*, *supra*, 128 Cal.App.4th at p. 1525.)

Further, whether an employer failed to reasonably accommodate an employee is a predominantly legal question because it "requires a critical consideration, in a factual context, of legal principles and their underlying values." (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 384.) The *D'Amico* rule does not control where the purported contradiction involves a legal question. (See, e.g., *R.J. Land & Associates Construction Co. v. Kiewit-Shea* (1999) 69 Cal.App.4th 416, 427, fn. 4; *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1503.)

4

Messina stated in her declaration she "felt intimidated, harassed, and threatened with job loss and humiliation in making special education referrals" during her employment with the District. The District objected to the statement on the grounds it lacked foundation and called for speculation. The District also objected on the ground the statement was improper opinion testimony. The court sustained the objections on all grounds.

Messina contends the court erred in sustaining the objections because the statement was of her own perception and state of mind. The District counters the statement lacks foundation and is speculative because it is merely an allegation of harassment and not evidence of harassment. We need not address the matter because Messina did not appeal the court's ruling on her harassment claim and she does explain

12

how this evidence relates to her age discrimination or failure to reasonably accommodate claims.

## B

*Objections to Everette's Declaration*

### 1

Everette stated in her declaration, "On at least one occasion, [Clay] stated that he wants to bring in 'young blood.' "  The District objected to the statement on the grounds it was irrelevant, it was hearsay, and it was inadmissible character evidence.  The District also objected on the grounds the statement was vague, ambiguous, and unintelligible as to "young blood."  The court sustained the objection on the hearsay ground.

Messina contends the court erred in sustaining the objection because the statement was not offered for its truth and, therefore, was not hearsay.  However, in the context of this case, the statement would have served little purpose if it was not offered for its truth.

Alternatively, Messina contends the statement falls within the "then existing state of mind" exception to the hearsay rule.  (Evid. Code, § 1250, subd. (a)(2).)  We agree. For purposes of this exception, "a statement of state of mind is one that (1) reflects the declarant's mental state, and (2) is offered, among other purposes, to prove the declarant's conduct (Evid. Code, § 1250, subd. (a)(2)), including the declarant's future conduct in accordance with his or her expressed intent [citations], unless the statement was made under circumstances indicating lack of trustworthiness (Evid. Code, § 1252; see *id*., § 1250, subd. (a).)" (*People v. Griffin* (2004) 33 Cal.4th 536, 578, disapproved of on another point by *People v. Riccardi* (2012) 54 Cal.4th 758, 824, fn. 32.)  Because the

13

statement reflects Clay's mental state and was offered to prove his conduct, and because there is no indication the statement was made under circumstances rendering it untrustworthy, the statement was admissible under the "then-existing state of mind exception" and the court erred in sustaining the District's hearsay objection to it.

2

Everette stated in her declaration Clay would frequently refer to her and Messina "as 'you and your buddy' and would make statements such as 'you and your buddy have declared war.' "  The District objected to the statement on the ground it was irrelevant. The court sustained the objection.

Messina contends the court erred in sustaining the objection because the statement showed Clay was hostile to two older workers.  However, as the District points out, the statement was without context and, on its face, it has nothing to do with Messina's age or disability.  At most, the statement shows Clay may have disliked Messina and Everette, but it does not show the dislike was due to their age or Messina's disability.  Any such inference would be entirely speculative.  The statement, therefore, had no tendency to prove or disprove any material fact in this case (Evid. Code, § 210) and the court properly sustained the District's objection.

3

Everette stated in her declaration that the head counselor "often spoke of the counselors' ages and devalued them on the basis of their age.  She continues to call me old or ask me if I need glasses."  The District objected to the statement on the grounds it

lacked foundation, called for speculation, and was irrelevant. The court sustained the lack of foundation and speculation objections.

Messina contends the court erred in sustaining the objection as to the portion of the statement accusing the head counselor of calling Everette old or asking her if she needed glasses because the statement was within Everette's personal knowledge and showed the head counselor's personal animus against older employees. The District did not directly respond to these contentions and instead asserted this portion of Everette's statement was irrelevant because there is no evidence the head counselor was a decision maker as to Messina's employment. The court, however, implicitly overruled the District's relevancy objection and correctly so. "An age-based remark not made directly in the context of an employment decision or uttered by a nondecision maker may be relevant, circumstantial evidence of discrimination." (*Reid v. Google, Inc.*, *supra*, 50 Cal.4th at p. 539.) Thus, a court properly considers evidence of alleged discriminatory remarks by decision makers and coworkers in determining whether a defendant is entitled to summary judgment. (*Id.* at p. 545.)

II

*Age Discrimination Claim*

FEHA makes it unlawful for an employer to discriminate against an employee who is 40 or older because of the employee's age. (Gov. Code, §§ 12926, subd. (b), 12940, subd. (a).) "California has adopted the three-stage burden-shifting test established by the United States Supreme Court [in *McDonald Douglas Corp. v. Green* (1973) 411 U.S. 792, 802-805] for trying claims of discrimination, including age discrimination,

15

based on a theory of disparate treatment.  [Citations.]  [¶]  This so-called *McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained.

"At trial, the *McDonnell Douglas* test places on the plaintiff the initial burden to establish a prima facie case of discrimination.  This step is designed to eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member of the protected class or was clearly unqualified, or where the job he sought was withdrawn and never filled.  [Citations.]  While the plaintiff's prima facie burden is 'not onerous' [citation], he must at least show ' "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion . . . .' [Citation]." [Citation.]' [Citations.]"

"The specific elements of a prima facie case may vary depending on the particular facts.  [Citations.]  Generally, the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.  [Citations.]

"If, at trial, the plaintiff establishes a prima facie case, a presumption of discrimination arises.  [Citations.]  This presumption, though 'rebuttable,' is 'legally

mandatory.' [Citations.] Thus, in a trial, '[i]f the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.' [Citations.]

"Accordingly, at this trial stage, the burden shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to 'raise[] a genuine issue of fact' and to 'justify a judgment for the [employer],' that its action was taken for a legitimate, nondiscriminatory reason. [Citations.] [¶] If the employer sustains this burden, the presumption of discrimination disappears. [Citations.] The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive. [Citations.] In an appropriate case, evidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias. [Citations.] The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." (*Guz, supra*, 24 Cal.4th at pp. 354-356, fns. omitted.)

When moving for summary judgment, an employer may proceed directly to the second prong of the *McDonald Douglas* test and present competent, admissible evidence showing it took the challenged action for legitimate, not discriminatory reasons. (*Guz, supra*, 24 Cal.4th at p. 357.) The employer's reasons need not have been wise or correct. Rather, " 'legitimate' reasons [citation] in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding *of discrimination*." (*Id.* at p. 358.)

17

The plaintiff then has the burden of rebutting the employer's showing "by pointing to evidence which nonetheless raises a rational inference that intentional discrimination occurred." (*Guz*, *supra*, 24 Cal.4th at pp. 357, 361.) "[A]n inference of intentional discrimination cannot be drawn solely from evidence, if any, that the company lied about its reasons. The pertinent statutes do not prohibit lying, they prohibit discrimination. [Citation.] Proof that the employer's proffered reasons are unworthy of credence may 'considerably assist' a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons. [Citation.] Still, there must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions." (*Id.* at pp. 360-361.) "[A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Id.* at p. 361.) Thus, "*even after* the plaintiff has presented *prima facie evidence* sufficient to establish an inference of prohibited discrimination in the absence of explanation, and has also presented evidence that the employer's innocent explanation is false, the employer is nonetheless *necessarily* entitled to *judgment as a matter of law* unless the plaintiff thereafter presents *further* evidence that the true reason was discriminatory." (*Ibid*.)

" 'Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. These include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case.' " (*Guz*, *supra*, 24 Cal.4th at p. 362.) A

18

court may grant summary judgment for an employer "where, given the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive, even if it may technically constitute a prima facie case, is too weak to raise a rational inference that discrimination occurred." (*Id.* at p. 362.)

In this case, the District presented competent, admissible evidence it declined to rehire Messina after her probationary period because of performance concerns, including that she was not a team player, was difficult to get along with, did not support the head counselor, and took extended lunch breaks. These reasons, if true, are facially unrelated to Messina's age and preclude a finding of discrimination. Accordingly, the District was entitled to judgment as a matter of law unless Messina presented competent, admissible evidence the District's true reasons were discriminatory.

Messina countered the District's evidence with evidence explaining her conduct and why she disagreed with and believed her superiors were mistaken in their assessment of her performance. She also presented evidence showing at least some of her coworkers disagreed with her superiors' assessment of her performance. She did not, however, present evidence the District's reasons for not rehiring her were "shifting, contradictory, implausible, uninformed, or factually baseless" such that "an inference of dissembling may arise." (*Guz, supra*, 24 Cal.4th at p. 363.) Rather, the evidence in the record indicates the District's view of her performance remained constant throughout her employment and its decision not to rehire her was based largely on specific complaints it received from three different employees at three different levels of the organization, only one of whom, the head counselor, was alleged to have any bias against older workers.

19

Moreover, an inference of pretext may not be drawn from evidence the employee or the employee's coworkers believed the employee performed well. The relevant inquiry is whether the decision makers genuinely believed the employee had performance problems. (See *Koski v. Standex Int'l Corp.* (7th Cir. Wis. 2002) 307 F.3d 672, 677-678; *Gross v. Akin*, (D.D.C. 2009) 599 F.Supp.2d 23, 31.)[4] Messina repeatedly acknowledged in her deposition her superiors actually perceived her performance to be poor. Thus, while Messina's evidence, viewed most favorably to her, might show the District's decision not to rehire her was unwise or based on incorrect information, the evidence does not show the District's decision was a pretext for age discrimination.

Messina's reliance on our decision in *Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297 (*Sandell*) is misplaced because the case is factually distinguishable. Unlike Messina, the plaintiff in *Sandell* did not concede the decision maker genuinely believed the plaintiff's performance was poor. Instead, the plaintiff presented significant evidence the decision maker could not have genuinely held such a belief. (*Id.* at pp. 315-319, 324.) In addition, the plaintiff presented evidence the decision maker regarded the plaintiff as old, repeatedly expressed a preference for firing older workers and replacing them with younger, cheaper workers, and acted in accordance with this preference once a worker turned 50. (*Id.* at pp. 325-326.) Messina has not presented any comparable evidence in this case.

---

4    "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." (*Guz*, *supra*, 24 Cal.4th at p. 354.)

The alleged ageist remarks by Clay, the vice principal, and the head counselor, while relevant, were also insufficient to create a triable issue of age discrimination. Messina did not provide any evidence of the context of the remarks or that the remarks were temporally or causally connected to the District's decisionmaking process. (*Reid v. Google*, *supra*, 50 Cal.4th at p. 541 ["who made the comments, when they were made in relation to the adverse employment decision, and in what context they were made are all factors that should be considered" in determining whether ageist comments create a triable issue of age discrimination].) Moreover, where, as here, there is a dearth of evidence the employer's decision was pretextual, such remarks will not, by themselves, create a triable issue of material fact. (*Ibid.*)

The anecdotal evidence of Clay's favoritism toward younger workers and the District's adverse employment actions against other older workers was likewise insufficient to create a triable issue of material fact because the evidence was not specific enough and did not involve enough employees to demonstrate a statistically reliable discriminatory pattern strong enough to overcome the District's evidence its reasons for not rehiring Messina were unrelated to her age. (*Guz*, *supra*, 24 Cal.4th at pp. 367-368.) Accordingly, Messina has not established the court erred by granting the District summary judgment on her age discrimination claim.

III

*Failure to Reasonably Accommodate Disability Claim*

FEHA makes it unlawful for an employer to fail to reasonably accommodate an employee's known physical or mental disability, unless the accommodation would

21

produce a demonstrable undue hardship.  (Gov. Code, § 12940, subd. (m).)  " 'The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability.' "  (*Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 971.)

" '[R]easonable accommodation' means 'a modification or adjustment to the workplace *that enables the employee to perform the essential functions of the job held or desired.*'  [Citation.]  ' "Reasonable accommodation" may include either of the following: [¶] (1) Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities.  [¶] (2) Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.'  ([Gov. Code,] § 12926, subd. (o); see Cal. Code Regs., tit. 2, § 7293.9, subd. (a); accord, 42 U.S.C. § 12111(9).)"  (*Furtado v. State Personnel Bd.* (2013) 212 Cal.App.4th 729, 745.)

Here, the District presented evidence that, when Messina complained about wrist problems, it conducted an ergonomic assessment, adjusted aspects of her work space, and provided her with a new chair and a document stand.  When her doctor restricted the number of hours she could type per day, the District immediately accepted the restriction and, during a period several months later when she had to work overtime, the District provided her with clerical help.  At her deposition, Messina testified without qualification

22

the accommodations themselves were reasonable. She does not contend otherwise on appeal. Rather, she contends the District failed to provide the accommodations in a timely manner.

Some federal courts have held an unreasonable delay may amount to a failure to provide reasonable accommodation. (*Valle-Arce v. P.R. Ports Auth.* (1st Cir. P.R. 2011) 651 F.3d 190, 200; *Selenke v. Med. Imaging of Colo.* (10th Cir. Colo. 2001) 248 F.3d 1249, 1262.) However, the parties have not cited nor are we aware of any published California cases addressing whether such a delay amounts to a failure to provide reasonable accommodation under the employment discrimination provisions of FEHA. Assuming, without deciding, federal law and FEHA are identical in this respect, Messina has not shown there is a triable issue of material fact on this point in this case.

Whether a delay is unreasonable and actionable depends on the circumstances, including the length of the delay, the reasons for the delay, whether alternative accommodations were offered while evaluating a particular request, and whether the employer acted in good faith. (*Velzen v. Grand Valley State Univ.* (W.D. Mich. 2012) 902 F. Supp.2d 1038, 1046; *West v. N.M. Taxation & Revenue Dep't* (D.N.M. 2010) 757 F.Supp.2d 1065, 1123.) Because a "responsible government is entitled to take time to evaluate alternatives before spending taxpayer money," we conclude the District's one- or two-month delay in procuring the new chair and other items for Messina's workstation was not unreasonable as a matter of law. (*Cloe v. City of Indianapolis* (7th Cir. Ind. 2013) 712 F.3d 1171, 1179; see also *Terrell v. USAir, Inc.* (M.D. Fla. 1996) 955 F.Supp. 1448, 1454.)

Moreover, an employer's delay in providing an accommodation is not actionable where the employer has provided an interim reasonable accommodation. (*Hartsfield v. Miami-Dade County* (S.D. Fla. 2000) 90 F.Supp.2d 1363, 1373; see also *West v. N.M. Taxation & Revenue Dep't*, *supra*, 757 F.Supp.2d at pp. 1122-1126; *Ungerleider v. Fleet Mortg. Group of Fleet Bank* (D. Conn. 2004) 329 F.Supp.2d 343, 354-355 & fn. 7.) Here, the record shows that before the District provided Messina with clerical support, it provided her with the interim accommodation of accepting the typing restrictions set by her doctor. There is no evidence in the record the absence of clerical support ever caused Messina to exceed these typing restrictions or to be unable to perform the essential functions of her job.[5] Messina, therefore, has not established the court erred in granting the District's motion for summary judgment on her failure to reasonably accommodate claim.

---

[5] Messina's declaration states she "was in essence asked to do 7 or 8 hours of typing in the 4 hours per day" permitted by her doctor; however, it does not state she ever exceeded her doctor's restriction. To the contrary, she states in the same paragraph of her declaration that "[t]he pain in [her] hands and wrists further restricted [her] from typing even that 4 hours per day," suggesting she typed less than what her doctor permitted.

24

DISPOSITION

The judgment is affirmed.  Respondents are awarded their appeal costs.


McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


O'ROURKE, J.