Filed 7/10/14  P. v. Carter CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B248167 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA057243) |
| v. | |
| RONYEN CARTER et al., | |
| Defendants and Appellants. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Bernie C. LaForteza, Judge.  Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant, Ronyen G. Carter.

Cynthia L. Barnes, under appointment for by the Court of Appeal, for Defendant and Appellant, Daveion M. Overman.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

Appellants Ronyen Carter and Daveion Overman were convicted, following a jury trial, of one count of first degree residential robbery in violation of Penal Code[1] section 211, one count of grand theft in violation of section 487, subdivision (a) and one count of false imprisonment by violence in violation of section 236. The jury found true the allegation that appellant Carter acted in concert and entered a structure within the meaning of section 213. The trial court sentenced appellant Carter to the upper term of nine years in state prison for the robbery conviction pursuant to section 213, subdivision (a)(1)(A). The court sentenced appellant Overman to the upper term of six years in prison for his robbery conviction. The court sentenced each appellant to a two year term for the grand theft conviction and a two year term for the false imprisonment conviction, but stayed those terms pursuant to section 654.

Appellants appeal from the judgment of conviction, contending the evidence is insufficient to support their convictions and further contending the court erred in admitting custodial statements by appellant Carter and refusing to admit statements made by alleged co-perpetrator Stevie C. to police.[2] We affirm the judgments of conviction.

Facts

In May, 2012, Jocelyn Woodard allowed Stevie C., and his sister Claire to stay in her apartment in Lancaster. She asked them to leave after a few days because Claire's behavior was unacceptable.

During the night of July 21, 2012, Woodard was asleep on the couch in her apartment when she was awakened by a man saying, "Wake up, bitch." Two men wearing masks were holding down her head and feet. A third man was crouching down. One of the men was holding a gun.

---

[1]    All further statutory references are to the Penal Code unless otherwise specified.

[2]    Each appellant joins in any argument raised by the other which may be relevant to him.

2

The men taped Woodard's mouth, wrists, and ankles, then put her on the floor and covered her with a blanket. She heard sounds coming from her son's bedroom. (Her son was not home.)

After 10 to 15 minutes, one of the men returned to the living room and gave Woodard a knife so that she could cut herself free. She did, then ran outside. She then went back inside to get her shoes and discovered one of the men was still inside. She ran back outside, and the man ran the other way.

Woodard discovered a hole in the corner of a window in her son's bedroom. She also discovered that about $2,000 worth of property had been taken from the apartment, including an Xbox 360, Xbox games, an iPod, a cell phone, a computer, and Woodard's wallet.

The Los Angeles County Sheriff's Department came to the apartment and investigated. Crime scene investigator James Collins took photographs of two distinct footprints outside the broken window. He also found two fingerprints on the broken window. One matched Stevie C. and the other Stevie's cousin Patrick C.[3] Collins found a roll of tape and a knife inside the apartment. DNA on these items belonged to Stevie and Woodard.

On July 25, 2012, the Los Angeles County Sheriff's Department served a search warrant at Patrick's home. Patrick was present, as was Stevie. In the living room, deputies found a pellet gun, a white hockey mask and some paperwork belonging to Patrick and Stevie. In Patrick's bedroom, they found Woodard's stolen Xbox, some stolen video games and Woodard's credit cards and driver's license. Deputies took Patrick and Stevie into custody.

Patrick was interviewed by police and initially denied being involved in the robbery. Eventually, Patrick admitted being involved in the robbery with Stevie and appellant Overman. Patrick said he purchased the tape used during the robbery. He also

---

[3]     Both were juveniles and so are referred to by their first names.

3

told police that he wore a mask during the robbery and used the tape to bind the woman who was in apartment.

Patrick testified at trial under a grant of immunity and stated that he had lied to police. Both appellants were involved in the robbery. Patrick and Stevie ran into appellants on the way to Woodard's apartment and told appellants they were going to "the house" to "get some money." Appellants accompanied them. At the apartment, Patrick broke a window and all four men entered. No one wore a mask inside the apartment. Patrick did not purchase the tape used in the robbery and did not personally bind anyone. Appellants helped Patrick and Stevie carry the stolen property to Patrick's home.

Stevie also spoke with deputies, but he did not receive immunity and so did not testify at trial. His statements to deputies were not admitted at trial.

On August 24, 2012, Johnny Lopez spoke with Sheriff's Detective Mark Donnel about the Woodward robbery. Lopez was in jail at the time. Lopez later testified that he knew both appellants and they had admitted to him that they had been involved in a home invasion robbery. They first told him about the robbery at night, when he encountered them running on the street a few blocks from Woodard's apartment. They repeated their statements on several other occasions. Lopez had prior convictions for theft, burglary and extortion. He admitted he spoke with Detective Donnel in an attempt to get some benefit in his own criminal case.

Detective Donnel arrested and interviewed both appellants. Recordings of the interviews were played for the jury at trial.

Appellant Carter initially told police he was with his girlfriend the night of the murder. He then told police that he went to Woodard's apartment but waited outside. He then said that he followed Patrick and Stevie into the apartment and took an Xbox and other items. Appellant Carter said Stevie and Patrick held Woodard down so she could be bound. Both men had their faces covered, one with a hockey mask. Appellant Carter acknowledged that he helped carry some of the stolen items to Patrick's house, and received some money for his help.

4

Appellant Overman told police he knew that Stevie and Patrick were planning a robbery but he did not participate. He said he went with Stevie and Patrick to the apartment the night before the robbery and waited outside while Stevie and Patrick went inside through the sliding glass doors. They were inside about two minutes. Appellant Overman did not return to the apartment the next night. He did not know if appellant Carter was involved in the robbery.

At trial, the prosecution introduced evidence that in a telephone call made from jail on October 2, 2012, appellant Overman said Lopez "gave way too much" and "did not have to do none of that." Appellant Overman said Lopez got his "ass beat" and "got what he deserved."

Appellant Carter testified in his own defense at trial and denied any involvement in the robbery. He lied when he told police that he was involved in the robbery. He never told Lopez he had been involved in the robbery. Appellant Carter did not learn of the robbery until the day Patrick was arrested. About two weeks later, Patrick called appellant Carter, told him the details of the robbery and said that he was going to frame him.

Appellant Carter testified that he and appellant Overman ran into Patrick and Stevie at about 9: 00 p.m. the night before the robbery and went with them to the Woodard apartment to see Woodard's son. They left upon learning that Woodard's son was not home. Appellant Carter had earlier purchased a BB gun for Patrick, but Patrick did not have the gun with him that night. Nothing was taken from the residence. There was no discussion of robbery. Appellant Carter was unsure what he did the night of the robbery. When he first spoke with detectives, he believed that he was with his girlfriend, but that turned out not to be the case.

In rebuttal, the prosecution offered evidence of a telephone call appellant Carter made from jail during which he asked a female to make a telephone call and "tell her . . I was with her the whole time. From the 21st all the way to the 25th." In surrebuttal, appellant Carter denied the phone call was an attempt to create a false alibi. At the time he made the call, he believed had had been with his girlfriend on the night of the robbery.

5

Discussion

1. Sufficiency of the evidence

Appellant Overman contends there is constitutionally insufficient evidence to support his conviction and so that conviction must be reversed. Appellant Carter joins in this contention. There is sufficient evidence to support both convictions.

"In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] [I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.]" (*People v. Nelson* (2011) 51 Cal.4th 198, 210 [internal quotation marks omitted].)

"Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." (*People v. Jones* (1990) 51 Cal.3d 294, 314, internal citations omitted; *People v. Nelson, supra*, 51 Cal.4th at p. 210 ["We do not reweigh evidence or reevaluate a witness's credibility."].)

Appellants contend the only evidence linking them to the robbery is the testimony of Patrick and Lopez, and their testimony was inconsistent with each other and with their prior statements to police. They conclude this testimony is not substantial evidence from

6

which a reasonable jury could conclude beyond a reasonable doubt that appellants were involved in the robbery.

Patrick testified that he, Stevie and both appellants entered Woodard's house together and all four of them carried the stolen property back to Patrick's house.

Patrick was an accomplice, and so his testimony alone cannot support appellants' convictions. Accomplice testimony must be corroborated by evidence that tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth. (*People v. Williams* (2013) 56 Cal.4th 630, 678-679.) The "corroborating evidence may be circumstantial or slight and entitled to little consideration when standing alone, and it must tend to implicate the defendant by relating to an act that is an element of the crime." (*People v. Abilez* (2007) 41 Cal.4th 472, 505.)

Lopez testified that both appellants admitted to him that they were involved in a home invasion robbery. An accomplice's testimony may be corroborated by the admissions or confessions of the defendant. (See, e.g., *People v. Newman* (1954) 127 Cal.App.2d 430, 435; *People v. Williams* (1951) 101 Cal.App.2d 624, 628.) Thus, Lopez's testimony is sufficient corroboration of Patrick's testimony.

Additional corroboration for appellant Overman's involvement in the robbery is provided by his recorded telephone call from jail indicating that he was unhappy that Lopez had given "way too much" information to the police. Additional corroboration for appellant Carter's involvement in the robbery is provided by his recorded confession to police and his recorded telephone call from jail attempting to create a false alibi.

Appellants are correct that there were inconsistencies in Patrick's and Lopez's testimony and both had a motive to lie. "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 403.)

Since we have determined "that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, the due process clause

7

of the United States Constitution is satisfied [citation] as is the due process clause of article I, section 15 of the California Constitution." (*People v. Osband* (1996) 13 Cal.4th 622, 690.)

    2.  Appellant Carter's custodial confession

Appellants contend Carter's custodial statements to police were involuntary and the trial court erred in admitting them. Appellant Carter contends he confessed in responses to false statements by the police. We find appellant Carter's statements to police to be voluntary, and so the trial court did not err in admitting those statements. There were no violations of appellants' constitutional rights.

An involuntary confession violates due process and is inadmissible under both the United States and California Constitutions. Courts look to the totality of the circumstances to determine if a confession was voluntary. (*Withrow v. Williams* (1993) 507 U.S. 680, 693 [113 S.Ct. 1745, 123 L.Ed.2d 407].) Factors to be considered when applying the totality of the circumstances include police coercion, the length and continuity of the interrogation, and the suspect's maturity, education, physical condition and mental health. (*People v. Massie* (1998) 19 Cal.4th 550, 576.) Generally, a confession is involuntary if it is not the product of a rational intellect and a free will. (*Mincey v. Arizona* (1978) 437 U.S. 385, 398.)

"So long as a police officer's misrepresentations or omissions are not of a kind likely to produce a *false* confession, confessions prompted by deception are admissible in evidence. (*People v. Jones* (1998) 17 Cal.4th 279, 299 [70 Cal.Rptr.2d 793, 949 P.2d 890]; *People v. Parrison* (1982) 137 Cal.App.3d 529, 537 [187 Cal.Rptr. 123].) Police officers are thus at liberty to utilize deceptive stratagems to trick a guilty person into confessing. The cases from California and federal courts validating such tactics are legion. [Citations.]" (*People v. Chutan* (1999) 72 Cal.App.4th 1276, 1280.)

A court's ruling on the voluntariness of a confession is subject to independent review on appeal, but the court's resolution of disputed facts, evaluation of credibility,

and findings as to the circumstances of the confession are upheld if supported by substantial evidence. (*People v. Dykes* (2009) 46 Cal.4th 731, 753-754.)

Appellant Carter contends his statements were made in response to misrepresentations by police concerning his constitutional rights to testify and to present a defense at trial. He points to the following exchange: Detective Ellis told appellant Carter that the prosecution would present a lot of witnesses at trial who would testify that Carter was involved in the robbery. The detective then asked, "[I]s your lawyer gonna put you up on the stand? No, he's not, is he?" Carter replied: "I don't know." Detective Ellis said, "Well, I'm gonna tell you you're [sic] lawyer is not gonna put you up on the stand, they never do." Detective Donnel added, "Now is your opportunity, okay, to tell us your side of the story like he talked about the Walmart videos." Carter responded, "Yeah, I can – I can explain all that."

Detective Ellis had no basis for saying that appellant Carter's lawyer would not let him take the stand. Carter did not even have a lawyer at that point. And, as the detective must have known, it is simply not true that defense lawyers never put their clients on the stand. The detective was clearly using misrepresentation in an attempt to get appellant Carter to confess.

Appellant Carter contends that misrepresentations about fundamental rights such as a defendant's right to testify require reversal. He relies on *Commonwealth v. Novo* (2004) 442 Mass. 262, 812 N.E.2d 1169 ("*Novo*") to support this contention. That case involves different facts, relies on Massachusetts law, and is not controlling or persuasive.

In *Novo*, the police told the defendant that if he did not offer a reason to police during the interview, "he would be unable to offer a reason to a jury later." (*Novo, supra*, 442 Mass. at p. 264.) The statements strongly implied that the suspect did not have a right to testify unless he first spoke with police. (*Ibid*.) In this case, detectives simply offered their (supposed) opinion that appellant Carter's attorney would not let him take the stand. They did not suggest that talking with them was a prerequisite to testifying.

9

More importantly, the Massachusetts Supreme Court did not consider in *Novo* whether the false statements were likely to cause a false confession. This is a key question under California law, and one appellant Carter does not answer in his appeal.

An example of a false statement likely to produce a false confession can be found in *People v. Lee* (2002) 95 Cal.App.4th 772. In *Lee*, the police falsely told the witness that he had been incriminated by a polygraph test, then "threatened him with a murder charge unless he named the defendant." (*People v. Quiroz* (2013) 215 Cal.App.4th 65, 79.) "The vice in *Lee* was that the interrogation was 'not designed to produce the truth as [the witness] knew it but to support a version of events the police had already decided upon.'" (*Ibid*.) Here, there is nothing in the interview transcripts showing detectives used their misrepresentations to get appellant Carter to support a particular version of events.

Appellant Carter has also failed to demonstrate that the misrepresentations caused him to confess. He is correct that he began talking right after the above-quoted misrepresentations, but he focused on explaining the (supposed) video tape of him purchasing a BB gun, and denying he knew what Patrick intended to do with the gun. It is much more likely that appellant Carter was motivated to speak by the video tape than the detective's misrepresentation about taking the stand. Carter only admitted involvement in the robbery after detectives told him that his girlfriend could not account for every minute of the day and also pointed out that people know that family members will lie to help loved ones. Thus, it is more likely that appellant Carter was motivated to admit involvement by the knowledge that he did not have a solid alibi than by the detectives' misrepresentations.


3. Statements by Stevie

Appellant Overman contends the court was required to grant alleged co-perpetrator Stevie judicial immunity so that he could testify at trial. In the alternative, he contends the trial court erred in refusing to admit statements made by Stevie as a declaration against penal interest. Appellant Overman contends the exclusion of the

10

statement violated his rights to due process, a fair trial and compulsory process of witnesses under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and the provisions of Article I, section 15 of the California Constitution. Appellant Carter joins in these contentions to the extent they benefit him.

a. Judicial immunity

Appellant Overman contends the prosecution unfairly chose to give immunity to Patrick and Lopez because their statements supported the prosecution's case and to deny immunity to Stevie because Stevie's statement was exculpatory as to appellant Overman. Under such circumstances, he contends, the trial court erred prejudicially in refusing his request to grant Stevie judicial immunity. The trial court did not err and there was no violation of appellant Overman's constitutional rights.

"The grant of immunity is an executive function, and prosecutors are not under a general obligation to provide immunity to witnesses in order to assist a defendant." (*People v. Williams* (2008) 43 Cal.4th 584, 622; § 1324.) The California Supreme Court has "expressed reservations concerning claims that the trial courts possess inherent authority to grant immunity." (*People v. Williams, supra*, 43 Cal.4th at pp.622-623.) The Court has characterized the claim as "doubtful." (*People v. Stewart* (2004) 33 Cal.4th 425, 468.)

Even assuming the trial court had inherent authority to grant immunity, a defendant would have to satisfy one of the two tests set forth in *Government of Virgin Islands v. Smith* (3d Cir. 1980) 615 F.2d 964 ("*Smith*").[4] (*People v. Hunter* (1989) 49 Cal.3d 957, 974.) Under *Smith*, "'the proffered testimony must be clearly exculpatory;

---

[4]     We note that the Third Circuit has recently rescinded the recognition to judicial authority to grant immunity which it recognized in *Smith*. (*U.S. v. Quinn* (3d Cir. 2013) 728 F.3d 243 ("*Quinn*").) The Third Circuit now views the issue as one of prosecutorial misconduct which is assessed under the test in *Smith*. Our Supreme Court's decision in *People v. Hunter, supra*, 49 Cal.3d 957, is still the law in California. We note that the result in this case would be the same under *Quinn*. Since there are no facts which would support a grant of judicial immunity under the *Smith* test, there are no facts which would support a finding of misconduct under *Quinn*.

11

the testimony must be essential; and there must be no strong government interests which countervail against a grant of immunity.'" (*People v. Hunter, supra*, 49 Cal.3d at p. 974, quoting *Smith*.) "'The defendant must make a convincing showing sufficient to satisfy the court that the testimony which will be forthcoming is . . . clearly exculpatory . . . . Immunity will be denied if the proffered testimony is found to be ambiguous [or] not clearly exculpatory.' (*Ibid*.)" Appellant Overman has failed to satisfy these stringent requirements.

The motion for judicial immunity is supported by a one page police report summarizing an interview with Stevie which lasted well over an hour. The summary contains no mention by Stevie of appellant Overman's participation in the crimes. This omission has exculpatory potential. It is not clear, however, that Stevie was asked about appellant Overman's involvement or stated that Overman had no involvement in the robberies. Thus, the statement is ambiguous and not clearly exculpatory.

Further, a grant of immunity would have burdened the prosecution. Stevie had admitted his involvement in the crimes, and the People were attempting to have Stevie tried as an adult. Thus, in Stevie's subsequent trial, the prosecutor "would have been forced to prove that the evidence offered was not obtained or derived from [the] immunized testimony." (*People v. Stewart, supra*, 33 Cal.4th at p. 469 [use immunity of witness burdens prosecution when witness will later be prosecuted for the same crimes as the defendant ].) Conferral of immunity would have facilitated perjury by Stevie, who had already shown a lack of truthfulness in his statement to police, and "at the same time would have substantially limited the prosecution's ability to conduct a full and free-ranging cross-examination . . . (so as to narrow the scope of testimony that [the witness] might later claim had tainted any subsequent prosecution)." (*Id*. at p. 470.)

Appellant Overman also failed to satisfy the second test of *Smith* which potentially authorizes a trial court to grant immunity to a defense witness when the prosecution has acted with the deliberate intention of distorting the fact-finding process. (*People v. Stewart, supra*, 33 Cal.4th at p. 471.)

12

Appellant Overman points out that the prosecutor did obtain immunity for Lopez and Patrick whose testimony was favorable to the prosecution. Lopez was not a suspect in this case and Patrick's case had already been resolved. As the prosecutor explained, the reason he did not offer Stevie immunity was that his case was still pending. Further, Patrick's pre-trial statement to police was no more favorable to the prosecution than was Stevie's. Stevie told police appellant Carter was present but not appellant Overman while Patrick told police appellant Overman was present but not appellant Carter. There is no basis to infer a deliberate intent to distort the trial from the prosecutor's actions.

b. Declaration against interest

Appellant Overman contends, in the alternative, the trial court erred in refusing to admit Stevie's statement to police as a declaration against penal interest pursuant to Evidence Code section 1230. The court refused to admit the statement because the court found it not trustworthy. The trial court did not abuse its discretion. There was no violation of appellant Overman's constitutional rights.

"Evidence Code section 1230 provides that the out-of-court declaration of an unavailable witness may be admitted for its truth if the statement, when made, was against the declarant's penal interest." (*People v. Lucas* (1995) 12 Cal.4th 415, 462.) The proponent of such evidence "must show that the declarant is unavailable, that the declaration was against the declarant's penal interest when made and that the declaration was sufficiently reliable to warrant admission despite its hearsay character." (*People v. Duarte* (2000) 24 Cal.4th 603, 610-611.)

The trial court's ruling under Evidence Code section 1230 is reviewed for an abuse of discretion. (*People v. Lawley* (2002) 27 Cal.4th 102, 154; *People v. Gordon* (1990) 50 Cal.3d 1223, 1250-1253; *People v. Arauz* (2012) 210 Cal.App.4th 1394, 1400.) The court's ruling "will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

13

In considering whether the declaration was sufficiently trustworthy, the court may take into account the words used, the circumstances under which they were written, and the declarant's possible motivation and relationship to the defendant. (*People v. Cudjo* (1993) 6 Cal.4th 585, 607.) In this context, the least reliable circumstance is one in which the declarant has been arrested and tries to improve his situation by deflecting responsibility onto others, while the most reliable circumstance is one in which the statement is made between friends in a non-coercive setting. (*People v. Greenberger* (1997) 58 Cal.App.4th 298, 334-335.)

Here, Stevie's statement about his own involvement in the robbery subjected him to the risk of criminal liability, as it amounted to an admission of guilt. His statement also implicated Carter and Patrick.

The mere fact that the hearsay declarant's statement also implicated another does not automatically render it unreliable or inadmissible. (*People v. Tran* (2013) 215 Cal.App.4th 1207, 1220.) However, "[s]pecial attention must be paid to any statements that tend to inculpate the nondeclarant. This is so because a statement's content is most reliable in that portion which inculpates the declarant. It is least reliable in that portion which shifts responsibility." (*People v. Greenberger, supra*, 58 Cal.App.4th at p. 335.)

"Under the rule of [*People v. Leach* (1975) 15 Cal.3d 419]*,* a hearsay statement 'which is in part inculpatory and in part exculpatory (e.g., one which admits some complicity but places the major responsibility on others) does not meet the test of trustworthiness and is thus inadmissible.' [Citations.]" (*People v. Duarte, supra*, 24 Cal.4th at p. 612.) To be admissible as a statement against penal interest, the declarant's statement must be "truly self-inculpatory, rather than merely [an] attempt[ ] to shift blame or curry favor." (*Williamson v. United States* (1994) 512 U.S. 594, 603; see *Duarte, supra*, at pp. 611-612.)

Here, the trial court found that although Stevie "does take blame himself, he's merely deflecting most of the blame to his counterparts." The court added, "He responded he really didn't do anything, he was watching out for Patrick. He added that this incident was just for fun." Statements which attempt to shift blame are less

14

trustworthy than purely self-inculpatory statements. (*People v. Greenberger, supra*, 58 Cal.App.4th at p. 335.) Further, as the court noted, Stevie's statements were made to police and so were testimonial. The incriminating statements were made in custody, and such statements are generally deemed the least reliable. (*Id.* at pp. 334-335.) Thus, the trial court did not abuse its discretion in finding Stevie's statement not trustworthy and therefore inadmissible.

Disposition

The judgments of conviction are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MINK, J.[*]

I concur:

TURNER, P. J.

---

[*] Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

MOSK, J., Dissenting

I dissent as to the conviction of defendant Ronyen Carter.  In *Commonwealth v. Novo* (Mass. 2004) 812 N.E.2d 1169, an officer during an interrogation told the defendant that if he did not give a reason for his action he would be unable to offer such a reason to a jury later.  The defendant then inculpated himself.  After setting forth factors in determining voluntariness of a statement, the court concluded that the officer's admonitions that the defendant had this one opportunity to give an explanation was improper and rendered the confession involuntary.  This conclusion has never been questioned.  Indeed, police "now-or-never" interrogation tactics to secure a confession have been considered by some to be improper and to render confessions involuntary.  (See "*Now or never" interrogation tactics won't do*.  (Sept. 14, 2004) 28 No. 19 Law Off. Bull. 1; *Confessions:  Interrogators' now-or-never theme made confession involuntary* (Sept. 2004) 21 No. 18 West's Criminal Law News 5.)  As stated by one authority, "False statements or misrepresentations about the defendant's legal rights, . . . are significant in the determination whether a confession is involuntary . . . ."  (Agnes, *The Voluntariness Doctrine* (2012) Mass. C.L.E. § 3.5, p. 14; see also *Logan v. State* (Md.App. 2005) 882 A.2d 330 [statement "the only way this jeopardizes you is if you don't tell the truth" rendered admission of the confession error, although not prejudicial error], aff'd on other grounds (Md. 2006) 906 A.2d 378.)  I realize that California courts have not dealt specifically with this issue.  But the reasoning of the Massachusetts court is worthy of consideration.

I see no meaningful distinction between the Massachusetts case and this one.  They both had the "now-or-never theme," which were false.  Here, the following colloquy took place during the interrogation of defendant Carter:  The detective told defendant Carter that the prosecution would present a lot of witnesses at trial who would testify that Carter was involved in the robbery.  The detective then asked, "'[I]s your lawyer gonna put you up on the stand?  No, he's not, is he?'  Carter replied:  'I don't know.'  The detective said, 'Well, I'm gonna tell you you're [*sic*] lawyer is not gonna put

you up on the stand, they never do.'  Another detective added, 'Now is your opportunity, okay, to tell us your side of the story like he talked about the Walmart videos.'  Carter responded, 'Yeah, I can—I can explain all that.'"  Almost immediately, defendant Carter began to inculpate himself.

The detective misrepresented to defendant Carter that a lawyer would not let him testify.  Carter has a constitutional right to testify.  (See *People v. Robles* (1970) 2 Cal.3d 205; 3 Witkin, Cal. Evidence (5th ed. 2012) Presentation at Trial, § 11, p. 46.)

Defendant Carter was 19-years-old; he had lacked sleep, which he noted at the outset of the interrogation; and the detective was not candid with him about the state of the evidence.  (See *Frazier v. Cupp* (1969) 394 U.S. 731, 739 [police misrepresentation of fact relevant to determining voluntariness of confession]; *In re Shawn D.* (1993) 20 Cal.App.4th 200, 213 [deception may be considered in determining voluntariness of a confession]; see also *People v. Mays* (2009) 174 Cal.App.4th 156, 164-165 [a police trick "by itself" does not render a confession mandatory].)

Incriminating statements that result from police misrepresentations that are of a kind likely to produce false incriminating statements are not admissible.  (See *People v. Mays, supra,* 174 Cal.App.4th at p. 165.)  As pointed out in *Commonwealth v. Novo, supra,* 812 N.E.2d at p. 1175, the misrepresentation of a defendant's right to testify, "is different in degree from false statements regarding the strength or existence of incriminating evidence, which we have criticized, [citation], but not always found to be determinative of voluntariness [citation].  It is conduct that casts substantial doubt on the voluntariness of a subsequent confession and on the integrity of the interrogation process leading up to it.  This doubt would be extremely difficult for the Commonwealth to overcome in any case, and it has not done so here."

The same is true here.  The prosecution has the burden of establishing by a preponderance of the evidence that a defendant's confession was voluntary.  (*People v. Williams* (2010) 49 Cal.4th 405, 436.)  We review the trial court's finding as to voluntariness de novo.  (*Ibid.*)  The California Supreme Court said, "Lies told by the police to a suspect under questioning can affect the voluntariness of an ensuing

2

confession, but they are not per se sufficient to make it involuntary. [Citation.]" (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1240.) The court has not discussed representations as to a defendant's rights. But significantly, the court added in *Musselwhite*, "Rather, there must be a *proximate* causal connection between the deception or subterfuge and the confession." (*Ibid.*) Here, the circumstances indicated that there was such a proximate causal connection. The incriminating statements followed almost immediately after defendant Carter was informed he would not have a chance to give his explanation at the trial. This also suggests that his "'will [was] overborne and his capacity for self-determination critically impaired'" by the false statement that it was "now-or-never" for him to explain. (*Id.* at p. 1235.)

The confession was not harmless beyond a reasonable doubt. The testimony of Lopez was suspect because he hoped for leniency in criminal proceedings against him for his testimony. Patrick admitted he repeatedly lied and would do so again to protect his cousin Stevie. There was no physical evidence implicating defendant Carter in the offense. His phone call from jail to create an alibi was not inconsistent with defendant's belief he had been with his girlfriend at the time of the robbery. Moreover, having falsely confessed, that he would try to establish an alibi does not prove he committed the crime. The only credible evidence putting defendant inside the house during the robbery was his confession.

Accordingly, I would reverse the judgment of conviction as to defendant Carter and would affirm the judgment of conviction as to defendant Overman.

MOSK, J.

3